W. J. WINFIELD v. R. O. BURTON, Jr., Adm'r, and another.

*Devisee—Sale of Land After Two Years—Rights of Purchaser—
Creditors' Lien.*

One Joyner by his will devised a certain lot of land to M. D. and upon her death the lot was sold in 1868 by order of Court, and the purchaser failing to pay, it was re-sold in 1871 and bought by defendant's intestate, who executed two notes with defendant H as surety for the purchase money and the sale was confirmed; the notes were delivered to G as receiver of the estate of J. J. D. and W. A. D. Jr.,

WINFIELD *v.* BURTON.

heirs of M. D. ; in 1876, G by order of Court transferred the notes to the survivor J. J. D., who was also administrator of W. A. D. Jr. and he endorsed them to the plaintiff for value.   In 1871 one B and wife and others brought suit against Joyner as surety on the guardian bond of one Daniel, all the devisees of Joyner being at different times made parties ; in 1877, the Court below adjudged· that the proceeds of the sale of land devised to M. D. was real estate in the hands of J. J. D. and he took no part as administrator of W. A. D. Jr., and that it was assets liable to the claim of B and wife and others, who recovered a large judgment ; the plaintiff had no nótice of the existence of this action when he purchased the notes ; *Held,*

(1) That the defendant's intestate acquired by his purchase a right to have the land conveyed on payment of the purchase money.

(2) That J. J. D.. as representing the devisee M. D., is liable to a per - sonal judgment against him for the value of the land, in favor of any creditor of Joyner who can not get payment out of personal assets.

(3) That the *quasi* lien of a creditor of an estate on the land of the decedent is destroyed by a sale after two years, leaving him only a personal claim on the heir, and the notes given for the purchase money are not subject to the *quasi* lien that the land was.

(4) That J. J. D. was not a trustee for the creditors of Joyner, and the notes in his hands could not have been seized, and much less in the hands of his assignee, whether he bought with notice of the creditor's claims or not, and therefore that the plaintiff is entitled to recover.

(*Lord* v. *Beard, ante* 5 ; *Campbell* v. *Drake,* 4 Ire. Eq. 94, cited and approved.)

CIVIL ACTION, tried at January Special Term, 1878, of HALIFAX Superior Court, before *Schenck, J.*

The plaintiff alleged that on the 6th of November, 1871, the defendant's intestate (Edward Conigland) and H. J. Hervey executed to John T. Gregory, receiver, &c., two notes for $330 each, and payable on the 6th of November, 1872 and '73 respectively; that before this action was brought they were by order of the Court assigned to one J. J. Daniel, who for value assigned them to the plaintiff, and that no part thereof has been paid ; wherefore the plaintiff demands judgment, &c.

The defendants, answering, admit the execution of the notes, and for defence say; that in 1871, R. C. Badger and wife and others commenced an action in said Court against W. A. Daniel (the former guardian of the feme plaintiff) and the executors of Andrew Joyner; and one of the femes plaintiff in the action died, leaving an only child, whose guardian was made a party to the suit; that said Joyner was a surety upon said Daniel's guardian bond, and died leaving a large personal and real estate which he disposed of by will; and at different times thereafter, all the devisees and legatees of said Joyner, and those claiming under them, were made parties to said action. Daniel and his sureties, except Joyner, were insolvent, and the action was brought to subject the estate of said Joyner to the payment of the indebtedness of said guardian to his said wards.

The defendants further alleged that Andrew Joyner devised to Mary C. Daniel a certain lot in the town of Halifax, and upon her death, the lot was sold by an order of Court on the 15th of March, 1863, to one McMahon, who failing to pay the purchase money, it was resold on the 6th of November, 1871, and bought by Edward Conigland the intestate of defendant, at $700, for which, except a small cash payment, he executed two notes with defendant Hervey as surety for $315 each, and the sale was confirmed. The notes were delivered to said Gregory, who had been appointed receiver of the estate of J. J. and W. A. Daniel, Jr., the children and representatives of the estate of said Mary C. Daniel, and who were also made parties to said suit; and upon the death of said W. A., Jr., the said J. J. Daniel qualified as his administrator, and as such and in his own right, applied on the 11th of August, 1876, to the Court for an order on said receiver to turn over the said notes to him, and *Watts, J.,* granted the order.

The defendants alleged that during the summer of 1876, the said J. J. Daniel came to the store of the plaintiff,

Winfield, and after referring to said notes, asked for advan-
ces in money and goods, and promised that the notes should
be assigned to plaintiff as collateral security for the same,
and on the faith of such representation the plaintiff made
advances to said Daniel to a considerable amount; and the
defendants are advised that at this time the plaintiff had
implied or legal notice that a suit was pending in reference
to these notes which were fully described in the complaint
filed in the action against said former guardian and the
sureties upon his bond and the devisees of said Joyner; that
after said arrangement with the plaintiff for the advances,
Daniel without plaintiff's knowledge deposited said notes
with Battle, Bunn & Co., of Norfolk, as collateral security
for a $400 debt he owed them ; and to secure his debt from
Daniel, the plaintiff was forced to assume Daniel's debt to
Battle, Bunn & Co., which he did by giving his own note,
and the said notes were thereupon assigned to plaintiff as
his property ; that at the time of assuming said debt, the
plaintiff had actual notice of the suit as aforesaid. See
*Badger* v. *Daniel*, 77 N. C., 251, and also preceding case.

The defendants also alleged that upon coming in of a re-
port of a referee to whom said suit had been referred, the
Court at Fall Term, 1877, adjudged among other things
that the proceeds of sale of land devised to said Mary C.
Daniel, when paid over to said J. J. Daniel, was real estate,
and no part thereof went into his hands as administrator of
said W. A. Daniel, Jr., and that certain rents for said lot
which were paid to him, were assets liable to the plaintiff's
claim ; and that the plaintiffs therein did recover of the
defendants therein a large amount.

The defendants in this action therefore insist that a title
to said land can not be made, and they are not liable on
said notes, nor is the plaintiff here, the person entitled to
receive the money on the notes, but that the other devisees
of Joyner have an interest in them, against said J. J. Dan-

iel, and that the plaintiff had full notice of the same.

The case being submitted on the complaint, answer and the certificate of the opinion in the case of *Badger* v. *Daniel, supra,* the Court gave judgment for the plaintiff, and the defendants appealed.

*Messrs. Gilliam & Gatling,* and *Walter Clark,* far plaintiff. *Mr. T. N. Hill,* for defendants:

RODMAN, J. At common law the lands of a deceased ancestor in the hands of his heir could not be subjected to the payment of the simple contract debts of the deceased If however the ancestor had bound himself and his heirs in a bond, the heir might have been sued thereon ; and if he had assets by descent, judgment might have been recovered against him to the value of the assets which he had by descent. This judgment might authorize either a general execution against the defendant as upon his personal debt, or a special execution against the land descended, in which case that alone was liable. An heir could immediately upon the death of the ancestor or at any time thereafter before judgment and award of special execution, sell the land descended and the purchaser acquired a title free from the incumbrance of the ancestral debt. The heir however was held bound to the creditor, in equity at least, to the value of the land. This general summary of the ancient law is abbreviated from Petersdoff's Abridgement, Title, *Heir.*

The liability of the lands of a deceased debtor has been extended to include all his debts, and the mode of enforcing it has been very much changed in modern times, but the principle of the liability has not been essentially changed, and reference to the old law may aid us in ascertaining what the present law is in a case not directly affected by legislation.

In order to prevent frauds upon creditors of a deceased ancestor, it was long ago enacted in this State that conveyances by an heir of lands descended, made within two years after the death of the ancestor, should be void as to the creditors of the ancestor. Conveyances made after two years were left as at common law, that is, the estate passed to the purchaser free from incumbrance.

In the present case the sale to Conigland was much more than two years after the death of Joyner, and it can not be doubted that he acquired an equitable title to the land, that is, a right to have a legal estate conveyed to him on payment of the purchase money. It is equally clear that the children of Mary Daniel (the devisees of the land) and those who have succeeded to their liabilities, are liable to a personal judgment against them to the value of the land in favor of any creditor of Joyner, who can not get payment out of his personal assets.

The defendant in the present case does not deny that he owes the debt to some one. His defence is that Badger and others, creditors of Joyner, had an equitable lien upon the notes sued on while in the hands of Daniel, to the amount of their debts; and that upon their failure to obtain payment from the personal assets of Joyner, and under the circumstances, this lien followed the notes in the hands of the plaintiff; so that defendant is liable to Badger and others and not to the plaintiff.

It may be observed here that under the decision of *Lord* v. *Beard, ante* 5, the present claim should regularly have been made by motion in the suit for partition among the Daniel children. This irregularity however is one which may be waived, and it has been; we pass it therefore without further notice. Also, the defendant under C. C. P., §§ 61, 65, might have required Badger and the other creditors of Joyner, named in the answer, to have been made parties to this action so as to have them bound by the decision.

But he has not thought proper to do so, and has asked us to decide the case in their absence. As to the effect of our decision upon their rights, we express no opinion. There being no replication to the new matter set forth in the answer, its truth was apparently admitted, and on the facts thus presented and assumed by the parties and the Court as true, the Judge gave judgment for the plaintiff, from which defendant appealed.

The question presented is,—have Badger, &c., any lien upon these notes ? No authority has been cited to us in favor of their right, and we have not found any either under the old procedure or the modern. If a creditor of a deceased person has a right to follow specifically the proceeds of the sale of his lands in the hands of the heir and of an assignee of the heir, it is certainly surprising that not only no decision can be anywhere found in favor of such a right, but no case in which the right appears to have been claimed, or supposed to exist. We think it clear upon general principles that no such right exists. The creditor has a *quasi* lien, if I may so call what is not a lien at all, on the land for two years, that is, he may under prescribed circumstances subject it to his debt, notwithstanding a sale by the heir within that time. He never had a *property* in the land and his *quasi* lien was destroyed by a sale after two years, leaving him a mere personal claim on the heir. Because, the notes of Conigland are the proceeds of the sale of the land, I do not think it follows that they can be said to *represent* the land even in the hands of the Daniels, and to be subject to the *quasi* lien that the land was.

The sale was a conversion lawful for them to make, subject to their assuming a personal liability. I know of no process by which the notes in their hands could be seized, and of no precedent for any, still less does any *quasi* lien exist against the assignee. Whether he bought with notice of the facts and of the claims of creditors or not, it appears

to me to make no difference. The idea of following property when it is converted into another form of property is derived from the law of trusts, and I believe is peculiar to that law.

If a guardian invests the money of his ward in land and sells the land to another with notice, the ward may hold the vendee a trustee for him, and so of any subsequent vendee with notice. If one take goods by a trespass, or by theft and sell them to another, the true owner may reclaim his goods from the vendee whether he knew of the want of title in his vendor or not; but I know of no authority which says that if the trespasser or the thief sells the goods, and converts the proceeds into other goods, the true owner has any property in, or any specific lien, or lien of any sort, on these last goods. *Campbell* v. *Drake*, 4 Ire., Eq. 94.

There can be no ground for saying that Daniel was a trustee for the creditors of Joyner. And if it be that the true owner has no specific claim to goods into which his goods have been converted wrongfully by a trespasser or a thief, *a fortiori*, must it be true that there can be no *lien* upon the proceeds of a sale of land which was permitted by law. The law permits the sale and substitutes for the land the personal liability of the heir. If the notes did represent the land in the hands of W. A. Daniel, it would seem, that he could sell and make a good title to them just as he could to the land. We concur with the Judge below, and judgment is affirmed.

No error.                       Judgment affirmed.