Richmond.

HEEKE V. ALLAN AND OTHERS.

March 18, 1920.

1. DESCENT AND DISTRIBUTION—*Debts of Decedent—Liability of Real
Property—Common Law.*—At common law, lands descended
were liable in the hands of the heir only for debts of record
and specialty debts in which the heir was expressly named.
This liability upon the land continued as long as the debt
was enforceable and the land remained in the hands of the
heir, but the heir could at any time after the death of the
ancestor readily discharge the land from this liability by
aliening it to a purchaser with or without notice of such
debts.

2. DESCENT AND DISTRIBUTION—*Debts of Decedent—Liability of Real
Property—Virginia Statutes.*—Upon the adoption of the Code
of 1849, the real estate of a decedent was made assets for the
payment of all debts and demands against the decedent. Sec-
tion 5, ch. 131, Code of 1849. But this still left it possible for
the heir to defeat the creditor's right to resort to the land by
a *bona fide* sale soon after the death of the testator. To sec-
tion 5, ch. 131 of the Code of 1849, however, the Code of 1887
annexed a proviso that no alienation made by an heir or de-
visee, within one year after the death of the decedent, should
be valid against creditors of such decedent. Code of 1887,
section 2667. This proviso gave the creditor a *quasi* lien on the
real estate of the decedent for a period of one year.

3. DESCENT AND DISTRIBUTION—*Debts of Decedent—Liability of Real
Property—Sec. 2667, Code of 1887.*—Under section 2667, Code
of 1887, nothing the heir or devisee could do within the year
could relieve the real estate of the decedent from liability for
his debts, and the statute was notice to all the world of this
fact. So that during this period of one year there could be
no such thing as a purchase from the heir or devisee without
notice. But this provision for the creditor was limited to
"one year after the death of the testator or intestate."

4. DESCENT AND DISTRIBUTION—*Debts of Decedent—Liability of Real
Property—Sec. 2667, Code of 1887.*—Under Code of 1887, sec-
tion 2667, after the expiration of one year from the death.

9

of the decedent, the real estate of decedent conveyed by his
heirs or distributees is not liable for the debts of decedent,
if the conveyance was *bona fide,* and at the time of such con-
veyance no suit had been commenced for the administration,
nor any report filed of the debts and demands, and even a
pending suit would not preserve the rights of creditors as
against a *bona fide* purchaser, unless a *lis pendens* was docketed
as required by section 3566, Code of 1904, section 6469, Code of
1919.

5. DESCENT AND DISTRIBUTION—*Debts of Decedent—Liability of
Real Property—Conveyance by Alienee of Land.*—One who has
purchased land from an heir within one year of the ancestor's
death can, after the expiration of such year, sell and transfer
a valid title to the land to a purchaser for value and without
notice, if no suit was pending nor list of debts and demands
filed. The deed between the heir and purchaser, although void
as to creditors until the expiration of a year from the de-
cedent's death, was valid between the parties and conveyed
to the grantee all the estate, right, title, and interest of the
grantor in the lands, Code of 1904, section 2438, and invested
him with the same right to convey free from debts of the
decedent as the grantor himself had. This result does no
injury to the creditors. If the creditors wish to subject the
land in the hands of the alienee, they must proceed against
it before the alienee transfers it to a purchaser for value
without notice of the debts.

6. ACKNOWLEDGMENTS—*Interest of Notary—Notary Trustee in Deed
of Trust—Taking Acknowledgment to Deed of Bargain and
Sale.*—A deed of bargain and sale was made, and the grantee
therein, as a part of the same transaction, conveyed the prop-
erty to a trustee to secure the deferred payments of the pur-
chase money. The notary who took the grantor's acknowl-
edgment to the deed of bargain and sale was named as trustee
in the deed of trust, but had no other connection with or in-
terest in the transaction.

*Held:* That the acknowledgment was a valid acknowledgment.

Appeal from a decree of the Chancery Court of city of
Richmond. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Leake & Buford,* for the appellant.

*Edgar Allan, Jr.,* and *Arden Howell,* for the appellee.

BURKS, J., delivered the opinion of the court.

Mrs. Annie B. Clarkston, a widow, died intestate in April, 1917, seized and possessed of two lots on Floyd avenue, Richmond, Virginia. There survived her, as her sole heir, a daughter, Imogene B. Clarkston, who afterwards intermarried with Harry M. West. Within one year after the death of her mother, to-wit, on November 1, 1917, Mrs. West united with her husband in a deed conveying said lots to the appellee, Edgar Allan, Jr. On January 5, 1918, Allan entered into a written contract with the appellant whereby Allan agreed to sell and the appellant agreed to purchase said lots on terms set forth in said contract. Under the terms of said contract the lots were to be conveyed to the appellant by proper deed duly acknowledged and made ready for recordation, and the appellant was to pay $2,950 cash and to assume the payment of certain liens on the property for the balance of the purchase money. As evidence of this assumption, the appellant was to sign the deed of conveyance which contained a proper covenant on his part to pay off and discharge said liens. It was further stipulated that the deed and cash should be delivered to trustees designated in the contract, and that the transfer of the title and the final settlement for the lots should not be made until May 15, 1918, when more than one year should have elapsed since the death of Mrs. Annie B. Clarkston. The contract concludes with the following stipulation:

"It is mutually agreed by the said vendor and the said

vendee and it is a distinct part of the agreement that the said vendee, Henry G. Heeke, shall not be required to comply with any of the provisions of this contract unless the said Edgar Allan, Jr., and his wife, can one year after the death of Annie B. Clarkston make a valid conveyance of said real estate as fully and effectually as the same could then be made by the said Imogene Clarkston West and her husband, had they not made their said deed dated November 1, 1917, hereinbefore referred to."

Allan executed the deed required of him and delivered it to the trustees designated and fully complied with the contract on his part. He then called upon the appellant to make the cash payment and to sign the deed, but he declined to do so, and this suit was instituted on March 12, 1918, to compel the appellant to specifically perform his said contract. The trial court entered a decree compelling specific performance, and from that decree this appeal was granted. The appellant resisted performance on three separate grounds, all of which the trial court rejected, and their rejection is made the basis of the assignments of error in the petition for this appeal.

1. It is assigned as error that the testimony does not sufficiently establish the fact that Mrs. Imogene C. West was the sole heir of Mrs. Annie B. Clarkston. The fact is clearly established by the testimony of the mother and half-sister of Mrs. Clarkston and there is no evidence to the contrary. It would be a waste of time to discuss this assignment.

2. The second error assigned is that, "Under the laws of Virginia, Allan, having purchased from an heir within one year of the ancestor's death, could not, after the expiration of such year, sell and transfer a valid title."

Before discussing this assignment of error, it might be well to state that the decree appealed from was entered February 3, 1919, and that prior to that time the personal

representative of Mrs. Clarkston had settled her final account as administratrix and that no debts appeared against her estate except those for which complainant had agreed to assume the payment, and that appellant does not now claim that there are any such debts in existence, but simply that he does not know that there are none such, and if it should turn out in the future that there are such debts the lots in controversy would be liable for their payment.

[1] At common law lands descended were liable in the hands of the heir only for debts of record and specialty debts in which the heir was expressly named. This liability upon the land continued as long as the debt was enforceable and the land remained in the hands of the heir, but the heir could at any time after the death of the ancestor readily discharge the land from this liability by aliening it to a purchaser. *Winfield* v. *Burton*, 79 N. C. 388, 392. As early as December, 1789, (1 Rev. Code 1819, Ch. 105, sec. 6), the legislature of the State enacted a statute declaring that any heir liable to pay the debts of his ancestor in regard to lands descended who should sell the same before action brought or process sued out against him, should be answerable for such debts to the value of the land sold, but expressly providing that the lands *bona fide* aliened before action brought should not be liable to such execution. This afforded but little protection to the creditor, as the heir might still freely *"bona fide* alien" at any time before action brought. A further step for the benefit of creditors was taken by the act of March 17, 1842 (Acts 1841-2, Ch. 98, p. 55), whereby real estate of a decedent was made liable for the payment of contract debts evidenced by writing signed by the decedent. It was not until the adoption of the Code of 1849 that real estate was made assets for the payment of all debts and demands against the decedent. Section 5 of chapter 131 of the Code of 1849 is as follows:

"Any heir or devisee who shall sell and convey any real estate which by this chapter is made assets, shall be liable to those entitled to be paid out of the said assets, for the value thereof with interest; in such case, the estate conveyed shall not be liable, if the conveyance was *bona fide*, and at the time of such conveyance no suit shall have been commenced for the administration of the said assets, nor any report have been filed as aforesaid of the debts and demands of those entitled."

[2-4] This still left it possible for the heir to defeat the creditor's right to resort to the land by a *bona fide* sale soon after the death of the testator. But so the law continued down to the revisal of 1887, when the revisors of the Code annexed to section 5 of chapter 131 of the Code of 1849, the following proviso: "provided that no alienation of such estate, made by an heir or devisee within one year after the death of the testator or intestate, shall be valid against creditors of such testator or intestate, although no suit shall have been commenced or report of debts and demands filed within said year." Code 1887, sec. 2667. This proviso was added manifestly in the interest of the creditor of the decedent, and gave him a *quasi* lien on the real estate of the decedent for a period of one year. Nothing the heir or devisee could do within the year could relieve the real estate of the decedent from liability for his debts, and the statute was notice to all the world of this fact. So that during this period of one year there could be no such thing as a purchase from the heir or devisee without notice. But this provision for the creditor was limited to "one year after the death of the testator or intestate." After the expiration of that time, the creditor is remitted to his rights under the other provisions of the section which declare that "the estate conveyed shall not be liable, if the conveyance was *bona fide*, and at the time of such conveyance no suit shall have been commenced

for the administration of such assets, nor any report have
been filed as aforesaid of the debts and demands of those
entitled," and even a pending suit would not preserve the
rights of such creditor as against a *bona fide* purchaser,
unless a *lis pendens* was docketed as required by section
3566, Code 1904 (sec. 6469, Code 1919).

[5] The most that can be claimed for the proviso is that
it renders any conveyance made by the heir or devisee
within the year void as to creditors of the decedent—not
absolutely void, but void as to such creditors. If void as
to such creditors, then as to them it was as if it had never
existed. If it never existed as to them, then after the ex-
piration of one year from the death of the decedent, the
heir could make good title to a purchaser for value and
without notice, if no suit was pending nor list of debts and
demands filed. What were the rights then, after the ex-
piration of the year, of an alienee of the heir made during
the year? The deed from Mrs. West and her husband to
Allan was valid between the parties thereto, and conveyed
to the grantee "all the estate, right, title and interest what-
ever, both at law and in equity, of the grantor in or to such
lands." Code 1904, sec. 2438. The effect of the deed was
to transfer to the grantee all of the grantors' rights and
powers over the land and to invest him with the same
right to convey free from debts of the decedent as the gran-
tors themselves had. It placed him in at least as good a
position as the heir occupied. This result does no injury
to the creditors, but gives them all the benefits the statute
intended to bestow. It treats the deed made during the
year as a nullity as to the creditors of the decedent, and
leaves them and the heir just where they would have been
if no such deed had been made by the heir until after the
expiration of the year. But it goes no further. If the
creditors wish to subject the land in the hands of the al-
ienee, they must proceed against it before the alienee trans-

fers it to a purchaser for value without notice of the debts, else the latter will take the land free from liability for such debts. Notwithstanding the conveyance of the heir in this case during the year, a purchaser from Allan will occupy at least as good a position as to the debts of the decedent as he would have occupied if the heir had held the land for more than a year, and then conveyed it to the purchaser. We express no opinion as to the liability of Allan for any debts of the decedent that may hereafter appear, as that question is not here involved.

North Carolina has a statute very similar to ours, in which the period of forbidden alienation by the heir or devisee is fixed at two years after the death of the debtor. In *Badger* v. *Daniel*, 79 N. C. 372, 381, it was said: "It is of course conceded that the sale by Henry Joyner, of the lands devised to him, to Whitfield, having been made within two years after the death of Andrew Joyner, was void as to the plaintiff. Whitfield held the land as Henry Joyner did, and sales by Whitfield after two years, passed unencumbered estates to his vendees." The same view was taken in *Davis* v. *Perry*, 96 N. C. 260, 1 S. E. 610.

The case of *Hopkins* v. *Ladd*, 12 R. I. 279, was cited by counsel for appellant as taking a different view of a similar statute, and the following language therefrom is quoted: "This language seems sufficiently plain, and must be taken to mean that a deed made by the heir before the time specified would be void as to creditors. This, we believe, was the general understanding of the profession." This in no wise conflicts with the views hereinbefore expressed.

[6] 3. It is further assigned as error that the acknowledgement of one of the deeds in Allan's chain of title was invalid because taken before a notary who was interested in the transaction. The facts were that a deed of bargain and sale was made, and the grantee therein, as a part of the same transaction, reconveyed the property to a trustee

to secure the deferred payments of the purchase money. The notary who took the grantor's acknowledgment to the deed of bargain and sale was named as trustee in the deed of trust to secure the purchase money. He had no other connection with nor interest in the transaction, and was not a party to the deed of bargain and sale. While the deed of bargain and sale and the deed of trust are to be regarded parts of the same transaction for some purposes, especially for the purpose of giving the vendor the first lien on the property conveyed for the purchase price thereof, they are wholly separate and independent instruments. The notary was not a party to the deed of bargain and sale, nor in any way interested in the property conveyed or the purchase money therefor. He was, at the time of taking the acknowledgment, a total stranger to the transaction, that is to say, he was not financially or beneficially interested in the instrument to which he took the acknowledgment. Whatever might be the effect of other instruments to be executed, either then or thereafter, it cannot be said that, in taking the acknowledgment to the deed of bargain and sale, he was acting as "a judge in his own case or a ministerial officer in his own behalf." The acknowledgment before him therefore was a valid acknowledgment.

We do not deem it necessary to cite or comment upon the many cases which have come before us on the sufficiency of acknowledgments to deeds, as none of them is in conflict with our present holding, and it would be a useless consumption of time and space to point out analogies or differences.

For the reasons hereinbefore stated, we are of opinion that the decree of the Chancery Court of the city of Richmond should be affirmed.

*Affirmed.*