# Richmond

LANDON LOWRY, RECEIVER, v. BETTIE P. NOELL, IN HER OWN RIGHT AND AS ADMINISTRATRIX, ETC.

February 24, 1941.

Record No. 2313.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

240

*Lowry & Radford* and *William W. Berry, Jr.*, for the appellant.

*W. R. Saunders* and *S. S. Lambeth, Jr.*, for the appellees.

Holt, J., delivered the opinion of the court.

R. C. Noell of Bedford county died intestate on December 31, 1933, leaving to survive him a widow and twelve children, five of whom were infants. On January 8, 1934, his widow, Bettie P. Noell, qualified as administratrix.

Decedent's principal asset was 157½ acres of land in this county. On February 2, 1934, these interested parties instituted a partition suit. A sale was ordered by decree of February 20, 1934, and a sale was had on March 5, 1934, confirmed by decree of March 6, 1934. The purchaser was R. B. Arrington at $2,150, who paid in cash $257.98 and assumed the trust deed debt for $1,892.02 due to the Greenbrier Joint Stock Land Bank of Lewisburg, West Virginia. On April 24, 1934, W. R. Saunders, the sales commissioner, and R. B. Arrington conveyed this land to Woodrow Noell and Bee Noell, children of decedent. None of the formal proceedings in this partition suit are challenged.

What, if anything, is due the Greenbrief Joint Stock

Land Bank we do not know. At decedent's death one payment was overdue.

On December 10, 1930, Landon Lowry was appointed by the State Corporation Commission receiver for the Bedford County Bank, Inc., with power to bring such suits as seemed to him necessary. On March 31, 1934, he recovered judgment against Bettie P. Noell, administratrix, for $570 on a debt due by her husband. On November 3, 1934, this suit was brought on behalf of himself and such other creditors of R. C. Noell as saw fit to come in. His primary purpose was to subject decedent's real estate to the payment of his debt. All of this is set out in some detail in the bill. To it answers and demurrers of defendants were filed. These demurrers have not in terms been overruled, but since the cause was heard upon its merits, it is to be presumed that they were. Michie's Digest, Vol. 3, p. 619, citing many cases.

At the July term, 1939, it was referred to a master commissioner, who in substance reported that the receiver had ample knowledge of proceedings in the partition suit and is now estopped. His report was confirmed by decree of January 4, 1940, which dismissed the bill.

Originally partition was a common law remedy but equity has long since assumed jurisdiction (Pomeroy's Equity, 3rd Ed., p. 2739), and can and should extend to it equitable principles.

" 'In all cases of partition,' says Judge Story, 'a court of equity does not act merely in a ministerial character, and in obedience to the call of the parties, who have a right to the partition; but it founds itself upon its general jurisdiction as a court of equity, and administers its relief *ex aequo et bono,* according to its own notions of general justice and equity between the parties. It will, therefore, by its decree, adjust all the equitable rights of the parties interested in the estate,' etc. 1 Story's Eq., section 656b." *Hinton* v. *Bland's Adm'r,* 81 Va. 588.

█ Creditors may come in, and their rights will be protected. Code, section 5281. Those who do are bound by what was done and can not sue again.

█ Plaintiff here was not a party to the partition suit nor is his debt mentioned. For that reason he is bound by nothing which was there done. *Cronise* v. *Carper, et. als.*, 80 Va. 678.

█ "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry* v. *Lee,* 311 U. S. 32, 61 S. Ct. 115, 117, 85 L. Ed. ...., decided November 12, 1940.

By Code, section 5397, it is provided:

"Any heir or devisee who shall sell and convey any real estate, which by this chapter is made assets, shall be liable to those entitled to be paid out of the said assets, for the value thereof, with interest; in such case, the estate conveyed shall not be liable if the conveyance was *bona fide,* and at the time of such conveyance no suit shall have been commenced for the administration of the said assets nor any reports have been filed as aforesaid of the debts and demands of those entitled. But no alienation of such estate, made by an heir or devisee, within one year after the death of the testator or intestate, shall be valid against creditors of such testator or intestate, although no such suit shall have been commenced or report of debts and demands filed within said year."

█ This statute gives to a creditor a *quasi* lien upon the real estate of a decedent. Nothing that heirs or devisees may do can defeat this lien within the year, and within that time there can be no such thing as a purchaser for value without notice. The statute gives him notice. *Heeke* v. *Allan,* 127 Va. 65; 102 S. E. 655. Here will be found a history of this statute and its growth. It evidences a continued purpose to protect creditors.

■ Certainly a partition in kind, *in pais*, among the parties could not defeat a valid lien, and it is equally certain that these liens could not be affected by a partition in kind ordered by a court. We know of no reason or authority which would support a different conclusion where a sale is had because a partition in kind appeared to be impracticable, however innocent the purchaser might be if the same was within the year. Such a sale is in effect a sale by the heirs. *United States* v. *Minor*, 235 F. 101; 47 C. J. 567, section 805.

■ Plaintiff's rights, so far as they are affected by any issue presented in this cause, are as they would have been had he obtained judgment before the partition suit was instituted. It is true that he knew all about it; but he is no more estopped than any other creditor would be, be that creditor at the date of decedent's death a judgment creditor or the holder of some unsecured debt. No principle of equity can be invoked against him. The debt to the Joint Stock Land Bank company was a first lien, concededly so; it was assumed by the purchaser. No money went into the hands of the heirs. There was none for them, and it is fairly plain that Arrington bought in this property in their interest. That he had a right to do, and the deed from him and from the sales commissioner was what might have been expected.

■ It may be said in passing that this suit was brought in 1934 and seems to have slept upon the docket until 1939. The court, in its discretion and under conditions named, might have stricken it from the docket after two years had passed without an order. Code, section 6172.

It is true that chancery causes do sometimes have to sleep and for many reasons, none of which are present here.

This statute, designed to speed litigation, should, in general, be obeyed.

For reasons stated, the decree appealed from should be reversed and this cause remanded to be proceeded in as are other creditors' suits.

*Reversed and remanded.*