# Staunton

MARY E. BALDWIN, ET AL. V. MAGGIE MOTHENA.

September 9, 1938.

Present, All the Justices.

The opinion states the case.

*A. T. Griffith,* for the plaintiffs in error.

*Andrew R. Summers* and *L. P. Summers,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

We are asked to establish boundary lines between coterminous landowners, Code, section 5490.

Frank H. Cox, a duly qualified surveyor, was directed by the court to prepare and file a plat and survey showing these Russell county lands in dispute and the contention of their claimants. That he has done. This lot appears on that plat as Q, 6, 7 and 8 and back to Q, along a three-strand wire fence. Plaintiff contends that her lines run north from A to 6 and around this lot to 8 and beyond. This is her chain of title sustained by the record:

"Mrs. Mothena from her husband; L. A. Mothena from N. H. Gilmer and others, Aug. 21, 1909, D. B. 46, p. 132; Gilmer from P. J. Reynolds, Nov. 25, 1894, D. B. 33, p. 499; Reynolds from O. F. Dickenson (& G. W. Johnson, Trustee), Dec. 31, 1886, D. B. 28, p. 433; Dickenson from E. S. Fugate, Aug. 27, 1870, D. B. 17, p. 307; Fugate from James Browning, Oct. 25, 1859, D. B. 15, p. 160; and Browning from Fultons' Executors Feb. 18, 1840."

The defendants trace their title in this wise: Willie C. Kegley and husband to Mary and V. X. Baldwin, Oct. 9, 1909, D. B. 48, p. 10; Hoge, Commissioner for Dickenson's heirs, to Martha E. Price and children (these Price children are Mrs. Baldwin and Mrs. Kegley), April 12, 1888, D. B. 24, p. 370; Isaac Vermillion to N. Dickenson, Feb. 17, 1845, D. B. 11, p. 454; James Necessary to Isaac Vermillion, April 4, 1844, D. B. 11, p. 377; Fulton's Ex'ors to James Necessary, July 15, 1837, D. B. 11, p. 26.

From this it appears that both plaintiff and defendants claim under Fulton's Ex'ors or from a common source—

plaintiff under a deed of date 1840 and the defendants from one of date 1837.

We think the plaintiff's chain embraces the land in dispute established by marked corners fairly located, although exact certainty cannot always be had. Nor do distances always hold. For example, the west line of this lot, running north from a known corner, was said to be 192 poles, which would bring it to point 5, but point 6, to which it does run, is some distance beyond 5 and is at a corner called for and found; also the line from 7 to 8 is sometimes said to be 42 poles and sometimes 46. The conclusion which we have reached is fortified by the jury's verdict and by the court's judgment. If this west line is in fact but 192 poles long, then plaintiff's paper title would not run from 6 to 7 to 8, but from 5 to J, K and M, and covers only a part of the land in dispute.

The deed from Fulton's executors to Necessary runs from point 6 S 24, E 20 poles to point B, a dogwood and chestnut; thence S 40, W 42 poles to point C, a chestnut oak and sourwood; thence S 42, E 100 poles to point D (stated on the map to be point I, but this must be a mistake, for there is no line from C to I). The deed from Necessary to Vermillion has in it the same calls as in the deed from Fulton to Necessary. The deed from Vermillion to Dickenson has also in it the same calls as the deed from Fulton to Necessary.

The deed from Hoge, Commissioner, to Martha E. Price and children appears to arrive at the point B as did Fulton's to Necessary. Its line then leaves that point S 12, E 44 poles to a sourwood not found but located at E. Then, according to the surveyor's report, the next line runs S 40, W 49 poles to a chestnut oak not found in old fence line and with the fence S 42, E 111 poles. But when we examine this deed of Hoge, Commissioner, a copy of which is in the record, we find that it runs from 6 S 24, E 20 poles to the point B and from there S 12, E 14 poles to a sourwood in an old fence, which is point E and from that point not S 40, W 49 poles, as stated in the surveyor's

report, but with an old fence S 42, E 111 poles, to a stake at the creek in a corner to Browning's land, from which point it turns north. In other words, this deed covers no part of the disputed land except the small triangle marked B, E and 7. The deed from the Kegleys to the Baldwins adopts point 6 and runs from that point S 12, E 44 poles, to the point G; thence S 40, E 42 poles, to a chestnut oak and sourwood in an old fence and with the fence S 42, E 48 poles. The land thus conveyed which interlocks to the extent noted with the land in dispute is by deed of date October 29, 1909, and covers land not covered by the Hoge deed if we except the small triangle B, E and 7. Therefore, the defendants' chain to the Fultons is broken, save to that extent.

This disputed land is wild land but is covered by the plaintiff's chain of title which runs back to 1840. It is part of a larger tract which she owns, a portion of which is actually in her possession and all of which she claims, and so constructive possession extends to the limits of her chain unless it be ousted by an older chain, here by a chain which it is contended goes back to 1837.

"As a general proposition it is no doubt true that actual possession of a part of a tract of land, under color and claim of title to the whole is possession of the whole, * * * ." *Green* v. *Pennington,* 105 Va. 801, 54 S. E. 877.

"Where a senior patentee settles upon any portion of his lands, claiming title to the whole, whether inside or outside of an interlock, before the junior patentee has settled upon any portion of the interlock, the senior patentee is in possession to the extent of his grant, and the subsequent entry of the junior patentees upon the interlock ousts the senior patentee only to the extent of the land actually in the occupancy of the junior patentee by residence, improvement, cultivation or other open, notorious and habitual acts of ownership." *Fry* v. *Stowers,* 98 Va. 417, 36 S. E. 482, 483.

In *Koiner* v. *Rankin's Heirs,* 11 Gratt. (52 Va.) 420, the court said:

"The case is one of two patents conflicting in part, occasioning what is called a 'lap' or 'interlock.' The elder patentee under his grant acquires at once constructive seizin in deed of all the land embraced within its boundaries, although he has taken no actual possession of any part thereof. *Clay* v. *White*, 1 Munf. (15 Va.) 162; *Green* v. *Liter*, 8 Cranch (12 U. S.) 229 [3 L. Ed. 545]. The junior patentee under his grant acquires similar constructive seizin in deed of all the land embraced by his boundaries, except that portion within the interlock, the seizin of which had already vested in the senior patentee. *Clarke's Lessee* v. *Courtney*, 5 Pet. (30 U. S.) 319, 354 [8 L. Ed. 140]; *Langdon* v. *Potter*, 3 Mass. 215."

Where constructive possession between senior and junior patentees or grantees, claiming from a common source, clash, the older title takes precedence, but this rule has no application to one who claims under a senior grant but whose chain of title does not reach back to it. He is a stranger to any grant with which he is not connected. Here the defendants claim through the Hoge deed, which does not purport to cover the land they claim.

The defendants, whose deed bears date October 29, 1909, also assert adversary possession to this land. Without discussing the evidence in detail, we think that claim is unsupported. The trial court thought so and declined to instruct the jury as to it. If the evidence does not support a claim of adversary possession, that instruction was properly rejected.

Objection is made to Instruction No. 2, which reads:

"The court further instructs the jury that if they believe by a preponderance of the evidence that the land in controversy is embraced in and covered by the deed from Gilmer to L. A. Mothena and in the will of L. A. Mothena to the plaintiff, and the jury should further believe, by a preponderance of the evidence that the land in controversy is not included or embraced in the title papers under which the defendant claims, and that the plaintiff and those under whom she claims has held the actual, open, notorious, visible,

hostile, exclusive and adverse possession of the land embraced in her title papers for a period of ten years or more prior to the institution of this suit, or any part thereof, then by law her possession is extended to the exterior boundaries contained in her said title papers and vests in her complete and perfect legal title to the land in controversy, and if the jury should so find they will find a verdict for the plaintiff and fix her boundary line or lines according to her pleadings filed in this cause."

■ This instruction, as applied to the facts in this case, is without error.

■ The defendants have title to the triangular lot, B. E and 7. In other respects the judgment appealed from should be affirmed, and it is so ordered. (A copy of so much of the surveyor's map as space permits is hereto attached.)

*Modified and affirmed.*

SKETCH
SHOWING LAND
MOTHENA ~Vs~ BALDWIN
WATERS OF CARRS CREEK

RUSSELL COUNTY ~ VA
Scale 1" = 200'

BALDWIN

MOTHENA

PHILLIPS

LAND IN DISPUTE