# Richmond

## Mont B. Kiser, Et Al. v. Clinchfield Coal Corporation.

January 26, 1959.

Record No. 4863.

Present, All the Justices.

The opinion states the case.

*S. H. Sutherland* (*S. H. & George C. Sutherland,* on brief), for the appellants.

*William A. Stuart* (*Penn, Stuart & Phillips,* on brief), for the appellee.

Whittle, J., delivered the opinion of the court.

On October 26, 1951, Clinchfield Coal Corporation, hereinafter called Clinchfield, filed a bill in chancery against Mont B. Kiser, et al., alleging title to the coal and minerals underlying a tract of 117 acres of land in Dickenson county, and also claiming title to a two-fifths interest in the surface thereof. The bill further alleged that Mont B. Kiser and his lessees (appellants here) were mining coal and trespassing upon said land.

Upon the filing of the bill the court entered an order restraining the trespass until the case could be heard on its merits.

Appellants demurred to the bill, and without waiving their demurrer, answered the same. Depositions were taken, and upon a hearing, the circuit court on October 4, 1957, entered a decree overruling the demurrer, adjudging Clinchfield to be the owner of the

mineral estate in the 117 acres and a two-fifths interest in the surface. A commissioner was appointed to ascertain the damages resulting from the alleged trespass. From this decree appellants appeal.

The record and briefs are voluminous, and there are some contentions made which we do not deem of sufficient merit to be considered. The material questions for decision are:

I. Did the court err in overruling the demurrer to Clinchfield's bill?

II. Was Clinchfield entitled to have the partition suit styled "Mont B. Kiser v. Clinchfield Coal Corporation, et al.", instituted on the 8th day of January, 1916 and removed from the docket on the 13th day of March, 1935, reinstated on the docket and considered in the instant cause?

III. Was Clinchfield entitled to a decree adjudging it the owner of the mineral estate underlying the 117-acre tract of land?

IV. Was Clinchfield entitled to a decree adjudging it the owner of a two-fifths undivided interest in the surface of the said 117-acre tract?

There is no merit in the point raised in question No. I to the effect that the court erred in overruling the demurrer to the bill. The bill clearly sets forth Clinchfield's position in the suit and apprises appellants of its claim. The pleadings fully point up the issues involved.

The point raised in question No. II developed when Clinchfield filed the instant suit in 1951, wherein it prayed that the partition suit theretofore brought by Mont B. Kiser on January 8, 1916, against his father, Schofield Kiser and Clinchfield, be revived and brought into this suit for the purpose of showing that Mont Kiser in the 1916 suit had taken a position inconsistent with the position taken in the 1951 suit.

In the suit brought in 1916 Mont Kiser claimed an undivided one-fourth interest in the surface of the 117 acres here involved. In its answer Clinchfield asserted then as it now asserts that it owned the mineral estate in the 117 acres and an undivided two-fifths interest in the surface.

Schofield Kiser, in his answer to the 1916 suit, claimed title in fee simple to the entire 117 acres and filed his cross-bill praying that the claims of his son, Mont Kiser, and of Clinchfield, and the deeds under which they based their respective claims, be set aside as constituting a cloud upon Schofield's title.

To this cross-bill Clinchfield filed its answer denying Schofield's claim and reasserted its ownership of the mineral estate and its undivided two-fifths interest in the surface. It prayed that the deeds under which Schofield Kiser based his claim be set aside and declared a cloud upon Clinchfield's title. Mont Kiser also filed an answer to the cross-bill in which he asserted his ownership of an undivided one-fourth interest in the surface and adopted Clinchfield's answer in the following language:

"* * * This respondent here adopts as his answer to said cross-bill the answer of Clinchfield * * * [and] asks that each and all of the allegations and statements of the said answer be read and considered as a part of this answer, as freely as if said answer was here copied *in extenso*."

The issue in the 1916 proceeding, both as to the original bill and the cross-bill, was between Mont Kiser and Clinchfield in agreement on one side, and Schofield Kiser adversely to Mont Kiser and Clinchfield on the other.

Depositions were taken in support of the respective claims and the case remained on the docket until March 13, 1935, at which time, on motion of the complainant, Mont B. Kiser, it was ordered "left" from the docket. The issues in the case had never been submitted for decision.

Mont Kiser's change in position since the first suit was removed from the docket in 1935 is brought about by the fact that on October 26, 1943, his father, Schofield Kiser, executed a deed purporting to convey to Mont and his wife the entire 117 acres in fee simple. Thus he now assumes the position attempted to be maintained by his father, and opposed by him, in the 1916 suit.

When Mont Kiser and his wife undertook to lease the mineral estate in the 117 acres in 1951, and the lessees undertook to remove coal therefrom, Clinchfield immediately filed the instant suit praying for a decision as to the title to the land and requesting an order restraining the mining operation.

In dealing with the question as to whether or not the 1916 suit should be considered in the instant case, the lower court took the position that Clinchfield's bill was in the nature of a bill of revivor. 1 Hogg on Equity Procedure (Va. and W. Va.), 3rd Ed. pp. 273-276. The 1916 suit was considered by the court as evidence in the present case and for the purpose of showing the flagrantly inconsistent positions sought to be maintained by Mont Kiser. The suit was not

treated as a bar or estoppel to Mont Kiser's right to assert his alleged title to the land in question. On the contrary, the court decided the instant case on the evidence as disclosed by the record.

The learned chancellor, in an able opinion filed and made a part of the decree appealed from, stated: "The issues in the original suit were never decided and subsequent to its dismissal pertinent other facts have arisen which are now proper to be taken into consideration. * * *" Thus, the question of whether or not the bill in the 1951 suit should be considered "in the nature of a bill of revivor" becomes immaterial for the reason that the court did not hold that the inconsistent positions take by Mont Kiser should bar or estop his right to assert his defenses in the instant suit. 19 Am. Jur., Estoppel, § 72, pp. 704-708; *Rohanna* v. *Vazzana*, 196 Va. 549, 553, 84 S. E. 2d 440, 442.

■ Question No. III challenges Clinchfield's right to the mineral estate in the 117-acre tract. The record discloses that in 1884 the land here involved was a part of a large tract consisting of some 1400 acres owned in fee simple by James M. Kiser, father of Schofield, which is the common source of title of all parties to this controversy.

On January 31, 1884, James M. Kiser and wife conveyed the 117 acres by deed in fee simple to their son Schofield. There was no exception of the mineral estate. This deed was not recorded until November 30, 1888 and, as hereinafter pointed out, was never acknowledged by James M. Kiser. In the meantime, on December 7, 1887, James M. Kiser and wife, together with certain of their children not here involved, conveyed the mineral estate and certain timber to Tazewell Coal and Iron Company.

The evidence discloses that after the deed of 1884 to Schofield Kiser was executed, he held possession of the surface until December 12, 1891, when he executed a deed for the 117 acres to James M. Kiser and wife, which contained the following exception, "with the exception of the coal and minerals" and certain timber.

Thus, at the time of the conveyance of 1887 of the mineral estate by James M. Kiser and wife to the Tazewell company, Schofield was in possession of the surface of the land, and under the common law rule stated in *Chapman* v. *Chapman*, 91 Va. 397, 21 S. E. 813, his possession was sufficient to charge Tazewell with notice of Schofield Kiser's deed. However, by statute enacted by the General Assembly of January 15, 1900, the common law rule was abrogated by adding a proviso to the recording statute (Acts of Assembly

1899-1900, p. 89) to the effect that mere possession shall not be notice to subsequent purchasers for valuable consideration. *Norfolk & P. Traction Co.* v. *White,* 113 Va. 102, 73 S. E. 467; Code of 1950, § 55-96. This was the law in effect on August 7, 1902, when Tazewell Coal and Iron Company executed two deeds to the land in question, one conveying to William Patrick an undivided three-fourths interest in the mineral estate, and the other conveying to L. C. Ware an undivided one-fourth interest in the mineral estate.

Thereafter, by mesne conveyances, the mineral estate passed to Clinchfield, at which time the proviso that mere possession shall not be notice to subsequent purchasers for valuable consideration was in effect. Thus, this proviso applied to all purchasers of the mineral estate since the enactment of the statute abrogating the rule in the *Chapman* case, and mere possession by Schofield or Mont Kiser since the effective date of the statute constituted no notice of Schofield's deed.

The record clearly discloses that Clinchfield in good faith, for valuable consideration, purchased in 1907 the mineral estate embraced in the deed from James M. Kiser to Tazewell, relying upon said deed and the recorded chain of title by subsequent conveyances from Tazewell and its successors in title. Therefore, if Clinchfield so purchased without notice of Schofield Kiser's deed, then Schofield's deed was and is void as to Clinchfield's deed of purchase.

Further, the record discloses that the only certificate of acknowledgement, or any other proof of execution of the deed by James M. Kiser to Schofield Kiser on January 31, 1884, appears to be a certificate of Jessie Wampler, a notary public, certifying the privy examination and acknowledgment of Elizabeth Kiser, wife of the grantor. Nowhere is it shown that James M. Kiser acknowledged the deed; therefore the deed was not duly admitted to record as to him. §§ 2500, 2501, Code, 1887; now §§ 55-106 and 55-113, Code, 1950.

It is argued by counsel for appellants that the attorney for Clinchfield who examined the title to the mineral estate prior to purchase must have had actual notice of Schofield's deed. It will be remembered that the deed from James M. Kiser to Schofield was not filed for recordation until after the conveyance of the coal and minerals by the deed from James M. Kiser to Tazewell, and an attorney examining the record as to the title to the mineral estate would not be called upon to look for the recordation of adverse conveyances

in the name of James M. Kiser subsequent to the date of the recordation of the duly acknowledged deed from James M. Kiser to the Tazewell Coal and Iron Company. The deed to Schofield Kiser was not recorded until four years and ten months after its execution, and ten months after the recordation of the deed to the Tazewell company. See *Bowman* v. *Holland*, 116 Va. 805, 83 S. E. 393.

In order for a deed and its recitals to operate as constructive notice to a *bona fide* purchaser of land it must be a link in the purchaser's chain of title. No purchaser is chargeable with constructive notice of all matters of record but only with such as the title deeds of the estate refer to or put him on inquiry about. *Lewis* v. *Barnhart*, 145 U. S. 56, 12 S. Ct. 772, 36 L. ed. 621; *Flanary* v. *Kane*, 102 Va. 547, 46 S. E. 312.

It was not incumbent upon Clinchfield's attorney to search the record for adverse conveyances by James M. Kiser recorded after the recordation of the Tazewell Coal and Iron Company's deed.

■ Appellants further contend that even if Mont Kiser's paper title to the mineral estate is not good as against Clinchfield, he has title to the same by adverse possession by reason of Schofield's possession. This is not true under the circumstances here involved. After the severance of the surface estate from the mineral estate, color of title to the mineral estate alone and possession of the surface estate not held adversely, is not sufficient. Mont Kiser has shown no occupancy or use of any part of the mineral estate such as would constitute actual possession, and there is no merit in this contention. *Loncey Clevinger* v. *Bull Creek Coal Co., Inc.*, 199 Va. 216, 219, 220, 98 S. E. 2d 670, 672, 673; 58 C.J.S., Mines and Minerals, § 157, page 329.

The record title exhibited by Clinchfield shows that it has a good recorded paper title to the mineral estate which was conveyed by the deed of December 7, 1887 from James M. Kiser to Tazewell Coal and Iron Company, and the evidence shows that it has exercised acts of exclusive ownership over the same and is therefore the owner of the mineral estate in the 117 acres in controversy.

■ Regarding question No. IV which involves Clinchfield's ownership of a two-fifths undivided interest in the surface of the 117-acre tract, it will be remembered that Schofield Kiser reconveyed the surface to his father, James M. Kiser, by deed of December 12, 1891. Thus, at that time, the title to the surface was left in James M. Kiser.

General creditors' suits were later instituted against James M. Kiser and Schofield Kiser in which all the lands of James M. Kiser were sold except 109 acres known as the home tract. Schofield Kiser bid in the 117-acre tract. Upon his failure to pay the purchase price a resale was ordered by the court, at which resale the 117-acre tract was bid in by John F. Trivett. The decree of the court dated June 15, 1902, shows that John F. Trivett assigned his purchase to Schofield Kiser, and directed the special commissioner to convey the 117 acres to Schofield, and the cause was then stricken from the docket without the deed to Schofield having been made.

On Febuary 9, 1903, another decree was entered in the then stricken cause. In this decree it was set out that Schofield Kiser had assigned his purchase to his wife, Nancy Kiser, and J. K. Damron was appointed special commissioner for the purpose of conveying the land to Nancy Kiser. This was done, and the conveyance was recorded as having been so made.

It is disclosed that the scrivener first wrote the deed to Schofield Kiser and later Schofield's name was stricken and Nancy's written in its place. Mont Kiser now contends that the deed could not have been changed so as to divest Schofield of his title. There is no merit in this contention. It nowhere appears that the deed was ever delivered to Schofield Kiser and accepted by him, and therefore it is not shown that title ever vested in Schofield. The certificate of acknowledgment by Damron, special commissioner, is dated the 9th day of February, 1903, which is the date of the deed and which is also the date of the decree directing the deed to be made to Nancy Kiser. Further, the evidence shows without contradiction, and in fact it is asserted by Mont Kiser in his brief, that Schofield had the deed changed from himself to Nancy Kiser in order to avoid the collection of a fine against Schofield for the illegal manufacture of whiskey. Thus it is elementary that the principle of estoppel would apply to Schofield or anyone claiming by, through or under him. *Davis* v. *Brown*, 94 U. S. 423, 426, 24 L. ed. 204.

And further, the record shows unequivocally that Nancy Kiser had been recognized by all parties concerned to be the owner of the surface of the 117 acres. Therefore, Mont Kiser, insofar as he claims title under Schofield, cannot claim that the change in the deed to Nancy Kiser was illegal.

A final intimation by Mont Kiser that the land deeded by Special Commissioner Damron to Nancy Kiser in the last general creditors'

suit did not involve the 117 acres here in controversy is, as the lower court held, without merit. The recorded evidence vouches the correctness of this decision. Futhermore, Schofield admitted in his answer to Mont's original bill of partition in 1916 that the 117-acre tract bid in for him in the creditors' suit was the tract in controversy as Mont then contended.

It therefore follows that title to the surface of the 117 acres passed to Nancy Kiser, and upon her death intestate vested in her heirs at law.

The record is clear that Clinchfield acquired its title to the surface by two deeds, each conveying a one-fifth undivided interest, from two of Nancy Kiser's five children, namely: Pearl Kiser Worley and husband, and Vada Kiser, unmarried.

Neither is there merit in Mont Kiser's contention that the deed of December 12, 1891, from Schofield to James M. Kiser, was a mortgage and not an outright deed of conveyance. The evidence and the record do not establish any such claim. The deed is an absolute conveyance on its face and there is no convincing proof to the contrary.

Other minor errors assigned by appellants are without merit and need not be considered.

For the reasons stated the decree appealed from is

*Affirmed.*