## Richmond

### Mary C. Smith, Et Al. v. The Pittston Company.

March 5, 1962.

Record No. 5362.

Present, All the Justices.

*J. E. Duff,* for the appellants.

*William A. Stuart (Penn, Stuart & Stuart,* on brief), for the appellee.

BUCHANAN, J., delivered the opinion of the court.

■ This suit in equity was brought by the appellants, who are the widow and heirs at law of G. B. Smith, to quiet and establish title to the coal and other minerals underlying two tracts of land in Dickenson county, one containing 94 acres and the other 38 acres, of which the appellants are concededly the owners of the surface. The bill alleged that the appellee, The Pittston Company, claims title to the coal and other minerals. It was made defendant to the bill and filed its answer denying that the appellants had any title to the mineral estate in either of the two tracts and setting up the chain of title under which it claimed ownership of the mineral estate.

Numerous depositions were taken and exhibits filed, upon consideration of which the court below, for reasons stated in a written opinion, entered the decree complained of adjudicating that The Pittston Company was the owner of the mineral estate in both tracts and dismissing the appellants' bill. The appellants challenge the correctness of that holding on this appeal.

The appellants claim to own the fee simple title in the two tracts by superior paper title as well as by adverse possession. The appellee asserts that it owns the mineral estate in the two tracts also by superior title and adverse possession.

Neither party traced title back to the Commonwealth. The oldest instrument of title produced was a deed to Henry Kiser from James Kiser, his brother, and Ephram Kiser, his father, dated January 24, 1862, recorded in Dickenson county January 29, 1888, conveying a tract of 1120 acres, which included both the 94-acre tract and the 38-acre tract. By a deed dated December 9, 1887, and recorded January 30, 1888, Henry Kiser conveyed to Tazewell Coal and Iron Company all the coal and minerals in this 1120-acre tract. Through duly executed and recorded mesne conveyances this title to the mineral estate vested in Clinchfield Coal Corporation by two deeds, one dated in

1906 and the other in 1907. Clinchfield was merged into The Pittston Company on December 28, 1956. Pittston and its predecessors in title have been duly assessed with and have paid the taxes on this mineral estate in the 1120-acre tract since the deed from Henry Kiser in 1887, severing the mineral estate from the surface.

At the date of his deed in 1862, Henry Kiser was living in a house on the 1120-acre tract of land and he continued to live there until his death in 1908. In fact, there was evidence that he and his first wife and four of their children were living there in 1850. He was twice married and had eighteen children who were reared on this land. One of his daughters-in-law, who was born in 1873, remembered visiting in the Kiser home when she was a small child and testified that the house then looked old and old fruit trees were standing in an orchard. She and a number of other witnesses testified that on the tract were also a barn and outbuildings, considerable cleared land and fences around pasture fields. Having color of title to the 1120-acre tract under his deed of 1862, and having undisturbed possession thereof for the ten-year period then required by law, Henry Kiser became the owner of a good possessory title to the whole 1120 acres in the year 1872. *Baldwin* v. *Mothena*, 171 Va. 94, 198 S. E. 569; 1 Mich. Jur., Adverse Possession, § 8, p. 228, § 29, p. 239.

The appellants claim the 94-acre tract in fee simple also under Henry Kiser and also by adverse possession, as stated. By a deed dated February 9, 1889, and recorded June 23, 1898, both after the date (December 9, 1887) and after the recording (January 30, 1888) of the deed from Henry Kiser conveying the mineral estate to Tazewell, Henry Kiser and wife conveyed the 94-acre tract to William P. Kiser (who was his son) and Phebe Kiser, his wife, without excepting the mineral estate, for a stated consideration of $300 paid to him by them.

By deed dated May 4, 1897, William P. Kiser and wife conveyed to said G. B. Smith a tract of 121.5 acres which included parts of the 94-acre tract and all of the 38-acre tract, but it provided that "all the coal and mineral on & under said land, except about ten acres is excepted from the operations of this deed." The 10-acre tract referred to lies along the eastern boundary of the 38 acres, is not within the 1120-acre tract, and is not claimed by the appellee. By this deed and by the will of William P. Kiser, probated February 26, 1915, and by inheritance from Phebe Kiser, said G. B. Smith acquired the interest of William P. Kiser and Phebe Kiser in the 94-acre tract.

Appellants say, however, that sometime prior to this 1889 deed from Henry Kiser to William P. Kiser and wife, one Henry Powers had bought this 94-acre tract, then estimated to be 100 acres, from Henry Kiser; that no deed was then or thereafter executed to Henry Powers, but he took possession of the tract and held and used it as his own; that it was assessed on the land books to Henry Powers from 1880 through 1887, and in 1888 to William P. Kiser with the notation "transferred from Henry Powers." Appellants say that sometime prior to 1888 Henry Powers sold this tract to William P. and Phebe Kiser but since the title was still in the name of Henry Kiser it was agreed that Henry Kiser would make the deed direct to William P. Kiser and Phebe Kiser, but "they didn't get around to making this deed until February 9, 1889."

This contention is a theory that is without solid evidence to support it. Appellants did produce as found among the papers of G. B. Smith after his death in 1939 an unsigned form of deed dated March 24, 1881, in some unknown handwriting, naming Henry Kiser as grantor and Henry Powers as grantee, and describing the 94 acres; and from the same source what appears to be a survey of the same date of "courses of Henry Powers' land." There was evidence that Henry Powers lived in a house on this 94 acres which was afterwards occupied by William P. Kiser and wife; that he stayed there "a good while," "raised his family there." There was some testimony as to statements made by William P. Kiser as to Henry Powers having bought the 94-acre tract and Henry Kiser making a deed which he did not sign because he did not have a deed himself, but this was hearsay testimony and clearly inadmissible because no part of the *res gestae. Pocahontas Fuel Co.* v. *Dillion*, 161 Va. 301, 312, 170 S. E. 616, 619.

The fact remains that there was no deed or other writing carrying out this supposed verbal agreement with Henry Powers, which in any event would have been void as to purchasers for value and without notice. Code 1887, § 2463; Code 1950, § 11-1.

Henry Powers had no color of title and definitely it is not shown that he held such possession as gave him title to anything prior to the conveyance of the mineral estate by Henry Kiser to Tazewell in 1887. As said by the trial court, even if the evidence showed equitable title in Henry Powers, his possession under the alleged verbal agreement was not adverse to the title of Henry Kiser but in privity with and under the protection thereof. *Chapman* v. *Chapman*, 91 Va. 397,

21 S. E. 813; *Thompson* v. *Camper*, 106 Va. 315, 55 S. E. 674; *Matthews* v. *W. T. Freeman Co.*, 191 Va. 385, 395-6, 60 S. E. 2d 909, 914.

When Henry Kiser conveyed to William P. Kiser and wife in 1889 he did not own and could not convey the mineral estate, of which fact his grantees had notice because their grantor's deed conveying the mineral estate to Tazewell was then on record and in their chain of title. Thereafter William P. Kiser and wife had no adverse possession of the mineral estate but held only the surface in privity with and not adversely to the owners of the mineral estate. They could not by merely holding possession of the surface thereby acquire title also to the mineral estate. *Chapman* v. *Chapman, supra*, 91 Va. at 399, 21 S. E. at 814; *Interstate Coal and Iron Co.* v. *Clintwood Coal and Timber Co.*, 105 Va. 574, 591-2, 54 S. E. 593, 598; *Clevinger* v. *Bull Creek Coal Co.*, 199 Va. 216, 220, 98 S. E. 2d 670, 672; *Ventro* v. *Clinchfield Coal Corp.*, 199 Va. 943, 951, 103 S. E. 2d 254, 260.

The reason is clear. The owner of the mineral expects to see the owners of the surface using their property, and their ordinary activities on the surface do not put him on notice and prompt him or cause him to suspect that such uses of the surface constitute an adverse claim to his minerals. " '[T]he owner of the surface holds, or is presumed to hold, possession for the benefit of the owner of the minerals, that is, as a quasi bailee or trustee for the mineral owner.' " *Clevinger* v. *Bull Creek Coal Co., supra*, 199 Va. at 220, 98 S. E. 2d at 672-3.

After a severance of the mineral and surface estates, the surface owner may acquire title to the minerals only by a possession of the minerals which has been actual, open, notorious, and hostile for the statutory limitation period (ten years at the time of these transactions). *Ventro* v. *Clinchfield Coal Corp., supra*, 199 Va. at 952, 103 S. E. 2d at 261. The evidence established no such possession in this case.

The decree holding that the appellee is the owner of the mineral estate in the 94 acres was clearly right.

■ The 38-acre tract lies within an interlock between the Henry Kiser 1120-acre tract and a tract of 1110 acres which was conveyed by Shade Williams to John Powers by deed dated in 1874, recorded in Buchanan county (where the land was prior to the formation of Dickenson county in 1880) on December 24, 1890, under "set-up" proceedings after the Buchanan county records were destroyed by fire in 1885. By deed dated March 24, 1881, recorded in Dickenson

county July 12, 1889, John Powers conveyed 48 acres to the said William P. Kiser, 38 acres of which, being the tract in controversy, was within the northeastern boundary lines of the Henry Kiser 1120-acre tract. As stated above, the appellee makes no claim to the mineral estate in the remaining ten acres.

By the deed above referred to dated May 4, 1897, William P. Kiser and wife conveyed the 38 acres, as part of the 121.5 acres, to said G. B. Smith, but excepted all the coal and minerals on the 38 acres.

The appellants contend first that they have the superior paper title to the 38 acres on the theory that Clinchfield was charged with notice of what the records of Buchanan and Dickenson counties showed with respect to the Powers 1110-acre tract, and with notice of William P. Kiser's claim by reason of his possession after his deed of 1881, recorded in 1889. They contend that such possession gave notice to Tazewell under the holding in *Chapman* v. *Chapman, supra,* decided in 1895, that actual, notorious and exclusive possession of land takes the place of recordation of instruments of title, and that one who buys land in the possession of another than his grantor must take notice of such possession (a rule later changed by statute to the provision of present § 55-96 that possession shall not of itself be notice to purchasers for value; Acts 1895, p. 842; Acts 1897-8, p. 833; Acts 1899-1900, p. 89; Code 1919, § 5194).

The deed to John Powers was not a link in Clinchfield's chain of title and the records with respect thereto were not constructive notice to Clinchfield. *Mont B. Kiser* v. *Clinchfield Coal Corp.,* 200 Va. 517, 523, 106 S. E. 2d 601, 606.

There is no evidence that Shade Williams or John Powers ever lived on, or had possession of, any part of the land within the interlock. On the other hand, as the record shows and as the trial court found, Henry Kiser took and held actual possession of the 1120-acre tract outside the interlock continuously from the date of his deed in 1862 until his conveyance of the coal and minerals to Tazewell in 1887. His was the senior deed, made some twelve years before the John Powers deed, and in such case the law of the possession of interlocks as between senior and junior patentees applies, as stated thus in *Fry* v. *Stowers,* 98 Va. 417, 419-20, 36 S. E. 482, 483:

". . . [W]here a senior patentee settles upon any portion of his land claiming title to the whole, whether inside or outside of the interlock, before the junior patentee has settled upon any part of the interlock, the senior patentee is in possession to the extent of his

grant, and a subsequent entry of the junior patentee upon the inter-lock only ousts the senior patentee to the extent of the land actually in the occupancy of the junior patentee by residence, improvement, cultivation, or other open, notorious and habitual acts of ownership." See also *Baldwin* v. *Mothena, supra*, 171 Va. at 98, 198 S. E. at 570; *LaDue* v. *Currell*, 201 Va. 200, 206, 110 S. E. 2d 217, 222.

We hold, as did the trial court, that the superior paper title is the appellee's title under the Henry Kiser 1120-acre deed.

■ The appellants contend next that they have the fee simple title to the 38-acre tract by adverse possession.

"To work a disseisin or ouster of the owner of land, it is not suf-ficient to set up a mere claim or color of title. The acts relied on must show actual, hostile, exclusive and continuous possession for the period of the statutory bar; acts of such notoriety that the true owner has actual knowledge, or may be presumed to know, of the adverse claim." *Leake* v. *Richardson*, 199 Va. 967, 976, 103 S. E. 2d 227, 234.

Henry Kiser's possession under his senior deed gave him construc-tive possession to the limits of his boundary, which continued good until there was a disseisin. "To constitute disseisin it is just as neces-sary for claimants to take *actual possession* of some part of the inter-lock as if they had entered without color of title. To be effective the entry must be with intent to oust the owner and the possession must be evidenced by some act or acts indicating an actual possession of the land [here the mineral estate] itself, as distinguished from mere sporadic taking of the products thereof." *LaDue* v. *Currell, supra*, 201 Va. at 206-7, 110 S. E. 2d at 222.

The evidence of adverse possession offered by the appellants fails to meet the required standards. Appellants say in their brief that there are no witnesses now living who can testify how William P. Kiser occupied the 48-acre tract. There is no evidence that he ever resided on the 38-acre tract. His daughter, the widow of G. B. Smith, testi-fied that after she and her husband married in 1888 they lived on the 94-acre tract for about two years and then moved to the 48-acre tract and into a house which they finished building. She did not know when it was built but said "he had it built a right smart while before we married." She did not explain to whom she referred.

Other evidence shows that the house she referred to was exactly on the property line between the 38-acre tract and the 10-acre tract which the appellants own. She said that when they moved onto the 48-acre tract there was not much fencing on it. "There was just a

house there, and we repaired and fixed it when we first went there, and then we put up most of the fencing there." G. B. Smith and his wife lived in this house on the line between the 38-acre tract and 10-acre tract from about 1891 until 1897, probably with the permission of William P. Kiser, as the record gives no other explanation. On May 4, 1897, William P. Kiser and wife conveyed the 48-acre tract to G. B. Smith and wife, excepting all the coal and mineral on all except the 10 acres referred to. Thereafter G. B. Smith was not holding adverse possession or any possession of the mineral estate, nor did his heirs at law. There was evidence that they used some of the coal for household purposes but this was with the tacit consent of the owners of the mineral estate and in keeping with a practice generally prevailing in that area as between the holders of the surface and the owners of the mineral estate. *Ventro* v. *Clinchfield Coal Corp., supra*, 199 Va. at 952, 103 S. E. 2d at 261.

At the time of the conveyance to G. B. Smith in 1897, there is little doubt that William P. Kiser knew that the coal and minerals on the 38 acres had been conveyed away by his father. He lived in a house on his father's land which was little more than a half mile from his father's house, and the fact that his father had received $1120 cash for the coal and minerals was not likely to have escaped the knowledge of his children. It is not unreasonable to suppose that William P. Kiser excepted (he did not say "reserved") the coal and minerals from the 38 acres of his conveyance to G. B. Smith because he knew that they were not his to convey, and there is no evidence that he afterwards ever asserted any claim to the mineral estate on the 38 acres. It is significant that he did not except the coal and minerals on the remaining 10 acres of the 48-acre tract which his father did not own and which William P. Kiser did have the right to convey.

Clinchfield became a complete purchaser for value of the mineral estate on the Henry Kiser 1120-acre tract in 1907, when the statute provided that possession by another without notice of other evidence of his title was not notice to Clinchfield (Acts 1899-1900, p. 90). Its predecessor in title, Henry Kiser, was the fee simple owner of the 1120-acre tract by virtue of his older deed and of his possession of that tract, including the 38 acres, before the date of the John Powers deed, which overlapped and included the 38 acres in the interlock. Nobody claiming under John Powers ever took actual possession of the mineral estate in the 38-acre tract so as to work a disseisin of the

true owner. Clinchfield began mining operations on the 1120-acre tract in 1918, not within the 38 acres it is true, but under its title derived from Henry Kiser, who was the owner of the 38 acres and who conveyed the mineral estate under all of it to Clinchfield's predecessor. This mining by Clinchfield has continued to the present time without any objection or any assertion of an adverse claim by the appellants or their predecessors until the institution of this suit.

The trial court was of opinion that Clinchfield had held adverse possession of the mineral estate for more than the required number of years to perfect its title if it were not good otherwise; and was further of opinion that equity should not entertain the appellants' suit because of their long delay in asserting their claim. We do not find it necessary to decide these points or to pass upon the correctness of the trial court's holding that adverse possession of the 38 acres if begun before the severance of the mineral estate would not continue so as to be adverse possession of the mineral estate. It is our conclusion that the evidence fails to establish adverse possession of the mineral estate on the 38 acres by the appellants and their predecessors sufficient to give them title thereto as against the older deed and possessory title under it acquired by the appellee's predecessors and now owned by the appellee.

The decree complained of is accordingly

*Affirmed.*