# Richmond

## Loncey Clevinger v. Bull Creek Coal Company. Inc.

June 14, 1957.

Record No. 4673.

Present, All the Justices.

The opinion states the case.

*A. T. Griffith* (*Brantley B. Griffith*, on brief), for the appellant.

*Joseph S. Gillespie* and *H. Claude Pobst* (*Pobst & Coleman*, on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

Bull Creek Coal Company, Incorporated instituted this suit in equity in April, 1952, against Loncey Clevinger and Lonie Clevinger, the purpose of which was to have repealed, set aside, and annulled a

grant from the Commonwealth to Loncey Clevinger (made pursuant to § 2504, Code of Virginia, 1942)[1] dated February 1, 1952, of 7.7 acres, insofar as it had application to or effect upon the title to the coal estate. The suit invoked the provisions of § 41-75, Code of Virginia, 1950.[2] From a decree awarding the company the relief prayed for we granted Loncey Clevinger an appeal in which his brother, Lonie Clevinger, did not join.

While the pleadings filed by respondents interposed several defenses, including the defense that it cannot be shown that John C. Clevinger and wife (whose names appear as grantors in the chain of title) owned the 7.7 acres, we are of the opinion that the basic issue is whether or not the *coal estate* in the tract was an estate in "waste and unappropriated land" belonging to the Commonwealth (Code, 1942, § 2504) or whether such coal estate was the property of Bull Creek at the time the grant was issued.

In order to sustain its contention that the coal estate in the tract belonged to it and was not "waste and unappropriated land" belonging to the Commonwealth, Bull Creek introduced various deeds of conveyance and other evidence showing ownership and possession prior to the grant to Loncey Clevinger. The company relied upon (1) the provisions of § 41-39, Code of Virginia, 1950,[3] and (2) the principle of law that a grant from the Commonwealth will be *presumed* for

---

[1] "§ 2504. PRICE OF WASTE LAND; REGISTER TO ISSUE GRANTS THEREFOR; WHEN DUPLICATES ISSUED.—A person desiring to purchase any waste and unappropriated land authorized by law to be sold shall pay into the treasury seventy-five cents for each acre of the same, and so in proportion for a greater or smaller quantity. The Treasurer shall give to the purchaser a receipt for the money paid, * * * and thereupon the Secretary of the Commonwealth shall issue a warrant therefor. * * *" (This section was repealed by Acts of Assembly, 1952, c. 185, p. 208, effective January 1, 1954. See 1950 Code of Virginia, Vol. 6, p. 492.)

[2] "§ 41-75. BILL IN EQUITY FOR REPEAL OF GRANT.—The Commonwealth or any other party desiring to repeal, in whole or in part, any grant of land because it was obtained by fraud, or issued contrary to law, or to the prejudice of such party's equitable right, may file a bill in equity for that purpose in the circuit court of the county, * * * in which the land, or some part thereof, lies, exhibiting with the bill a certified copy of the patent, and making all proper parties."

[3] "§ 41-39. WHEN LOCATION OF WARRANT INVALID; WHEN COMMONWEALTH'S RIGHT RELINQUISHED TO LAND SETTLED ON.—No location of any Land Office warrant upon any land which shall have been settled continuously for five years previously, upon which taxes shall have been paid at any time within such five years by the person having settled the same, or any person claiming under him, shall be valid; * * *." (This section was carried in the Code of 1942 as § 457.)

land which has been in long-continued possession under color of title.

While the chancellor in our opinion properly held for the company under both theories, in our view the evidence is conclusive on the first, which we will treat herein.

The uncontroverted evidence is that the 7.7 acre tract was included within the boundaries of a tract containing 244.85 acres; that the coal estate in the 244.85 acre tract was severed from the surface and other estate and conveyed by John C. Clevinger and wife to Chapman, Trustee, by deed dated October 11, 1902; that Bull Creek acquired the coal estate in this tract by deed from Chapman, Trustee, and others on July 10, 1907.

The surface and other estate in said 7.7 acre tract (excluding the coal estate) devolved as follows: By deed dated April 15, 1912, John C. Clevinger conveyed to Joseph Clevinger and Polly Ann Deel a tract of 200 acres, the boundaries of which included the 7.7 acres; by deed dated February 7, 1914, Joseph Clevinger and wife, in partitioning the 200 acres, conveyed 100 acres thereof to Polly Ann Deel, the boundaries of which included the 7.7 acre tract; by deed dated August 13, 1914, Ben Deel and Polly Ann Deel, his wife, conveyed this 100 acre tract to S. A. and Victory Clevinger; and by deed dated December 8, 1948, S. A. Clevinger and Victory Clevinger, his wife, conveyed to Lonie Clevinger a tract of 20 acres out of the 100 acre tract owned by them, which said tract of 20 acres included the land in controversy.

Lonie Clevinger, a respondent in the court below, and Loncey Clevinger, the appellant here, were the sons of S. A. Clevinger and the grandsons of John C. Clevinger, former claimants and grantors of this land.

Both Lonie and Loncey Clevinger, together with other witnesses, testified that the 20 acre tract which included the 7.7 acres here involved had been cleared by them and their predecessors in title; that crops had been continuously tended and grown thereon; that fences had been erected on the land, and that Lonie Clevinger had cultivated it since he acquired it in 1948.

The record further shows that this land had been tended by S. A. Clevinger, father of Lonie Clevinger, and one Jonas O'Quinn, for many years prior to Lonie's acquisition thereof in 1948—"as far back as the early 1930's". One Albert Breeding, whose testimony is also undisputed, stated that there had been a continued possession of the

surface of the tract for a period extending back forty-three years prior to the time of his testifying in 1954. Thus the evidence of the respondents themselves, in addition to that of many other witnesses, clearly shows without contradiction that this land was settled continuously for more than the required five years previous to the 1952 grant to Loncey Clevinger and clearly comes within the provisions of § 41-39 of the Code.

It is worthy of note that Lonie Clevinger has in no way attacked the grant to his brother, Loncey Clevinger, but has rather collaborated with him in his effort to secure the fee simple title to the 7.7 acres from the Commonwealth although he (Lonie) has exercised dominion over the surface since his deed thereto in 1948.

It is further disclosed that on January 1, 1934, Bull Creek leased to H. E. Harman Coal Corporation the Clintwood and Splashdam seams of coal in some sixty tracts of land situate in Buchanan County; that the John C. Clevinger 244.85 acres was one of the tracts included in this lease; that the mining operations of the Harman Coal Corporation under the lease began in 1934, extending into the 244.85 acre tract in June, 1944, and into and from the 7.7 acre tract in March or April, 1947. Loncey Clevinger testified that he had been an employee of the Harman Coal Corporation since 1934, being a member of its engineering crew, and that he was familiar with its mining operations.

It was further shown without contradiction that the tract in question had been included in a gross tax assessment against the Bull Creek Coal Company on all of its mineral lands from the year 1934 up to and including the year 1953, and that the surface tracts which included the 7.7 acres had been assessed for taxation in the name of the record owners thereof from the year 1914 through the year 1953, and that the taxes thereon had been paid under such assessments.

It is shown beyond peradventure that Bull Creek settled upon and took possession of the coal estate in the 7.7 acre tract at the latest when, through its lessee, Harman Coal Corporation, mining was begun on the John C. Clevinger 244.85 acre tract in June, 1944 under the mining lease which covered this 244.85 acre tract, which in turn included the 7.7 acres.

Since the severance of the coal estate from the surface and other estate in 1902 there has been no possession of the coal strata under the 7.7 acre tract adverse to the title of Bull Creek, whose mining operations under its large contiguous coal estate have continued con-

stantly since 1934. However, we are not here concerned with adverse possession which confers title, but only with possession for a five-year period as contemplated by § 41-39, Code of Virginia, 1950, *supra*.

We are of the opinion that it having been shown that the surface of said 7.7 acre tract had been cleared, fenced and cultivated for a period extending back forty-three years from the date of suit, such proof removes this land from the category of "waste and unappropriated land" subject to grant from the Commonwealth as contemplated by § 2504, Code of 1942, *supra*, which at common law (there being a common source of title) inures to the benefit of the owner of the coal estate. Some States have statutes to this effect which are but declaratory of the common law which we follow in the absence of statute. *Farnsworth* v. *Barret*, 146 Ky. 556, 142 S. W. 1049; *Shrewsbury* v. *Pocahontas C. & C. Co.* (W. Va.), 219 F. 142, 147.

As said in 58 C. J. S., Mines and Minerals, § 157, pages 329, 330:

"* * * At common law and under statutes in some jurisdictions, title and ownership of the surface of the land do not give or carry title or possession to the mineral estate thereunder which has been sold and severed from the surface, but the owner of the surface holds, or is presumed to hold, possession for the benefit of the owner of the minerals, that is, as a quasi bailee or trustee for the mineral owner."

See also *Yoss* v. *Markley*, 46 Ohio Law Abstract 217, 68 N. E. 2d 399, 402; Thompson on Real Property, Vol. 10, § 5559.

The chancellor correctly decided that this 7.7 acre tract was not such "waste and unappropriated land" as the Commonwealth had a right to grant. (Code, 1942, § 2504, *supra*; Code, 1950, § 41-39, *supra*.)

For the reasons stated the decree is

*Affirmed.*