## Richmond

### Mountain Mission School, Incorporated v. Mary Preston White, Et Al.

April 22, 1963.

Record No. 5552.

Present, All the Justices.

The opinion states the case.

*George C. Sutherland* and *Carl C. Gillespie (S. H. & George C. Sutherland; Gillespie & Gillespie,* on brief), for the appellant.

*H. Claude Pobst* and *Marjorie Coleman (Pobst & Coleman,* on brief), for appellees, Mary Preston White, et al.

*Leslie M. Mullins,* on brief, for appellees, Riverside Coal Corporation, et al.

Spratley, J., delivered the opinion of the court.

This is a controversy over the ownership of an undivided one-third interest in the coal and minerals in, on and under 321.5 acres of land on New House Branch of Slate Creek in Buchanan county. Mountain Mission School, Incorporated, hereinafter referred to as appellant, claims ownership of the entire tract of land and minerals theron; while Mary Preston White and ten other heirs-at-law of James L. White, and John A. Blakemore, devisee of John A. Buchanan, hereinafter referred to as appellees, claim a one-third undivided interest in the coal and minerals on the tract.

This proceeding was instituted by a petition for a declaratory judgment filed by F. B. Fowler and Riverside Coal Corporation against appellant and appellees. Petitioners alleged that they held leases from both appellant and appellees to a part of the coal on the 321.5-acre tract; that there was a controversy between appellant and appellees as to the ownership of the coal, and as to which should be paid the royalties for the coal and mining rights; and prayed the court to determine the ownership of the land and the coal thereunder, and who should receive the royalties from the coal.

Answers were filed by appellant and by appellees setting out their respective claims. Fowler and Riverside Coal Corporation took no further part, except to admit their willingness to pay the royalties to whomsoever might be adjudicated owners of the minerals in controversy. The court held in favor of appellees, and we granted Mountain Mission School, Incorporated, this appeal.

No evidence was taken; but the case was heard upon stipulations and exhibits from the records setting out the facts upon which appellant and appellees relied.

The stipulations set out: (1) that William H. Boothe had, many years ago, acquired a grant from the Commonwealth of Virginia

covering all the land in controversy; (2) that this grant was the common source of title of all of claimants of the land; (3) that by deed dated May 22, 1889, and recorded in the clerk's office of the Circuit Court of Buchanan county on April 10, 1890, William H. Boothe and his daughter, E. J. Rowe, and her husband, had conveyed to John A. Buchanan and James L. White an undivided one-third interest in the coal, oil and gas on the 321.5 acres of land; (4) that an attested copy of all the record and proceedings in the circuit court of Buchanan county in 1894, purporting to set up and establish a deed claimed to have been made in 1881 by William H. Boothe and wife, conveying two certain parcels of land to E. J. Rowe, "during her life, and then to go to the heirs of her body at her death," alleged to have been duly recorded in the clerk's office of the said county; and subsequently destroyed by fire in 1885, was offered as a basis for the claim of Mountain Mission School to ownership of the land in controversy; (5) that John A. Buchanan and James L. White, well-known citizens and practicing attorneys of Abingdon, Virginia, were living at the time the above proceedings were had, and lived for many years thereafter; (6) that E. J. Rowe, sometimes known as E. Jane Rowe, had heretofore departed this life intestate; (7) that her heirs-at-law by various deeds of record had conveyed all their right, title and interest, if any, in and to the land in controversy to J. D. Bishop, that J. D. Bishop and wife by deed dated April 7, 1905 conveyed to J. H. Stinson the said 321.5 acres of land, expressly excepting therefrom "1/3 of the coal which had been conveyed to John A. Buchanan and James L. White by deed of record", (8) that by deed dated June 8, 1946, Amy Lee Powers, executrix of the estate of J. H. Stinson, deceased, conveyed to Mountain Mission School, Incorporated, "all her interest in the 321.5 acres, excepting certain parcels theretofore conveyed by her;" (9) that by deed dated March 2, 1959, duly recorded, J. D. Bishop, widower, "sold, quitclaim and released to Mountain Mission School, Incorporated, any and all of his right, title and interest in the E. J. Rowe tract of land, which covers the land in controversy;" (10) that after the death of E. J. Rowe in 1899, "her children, one or more of them, held the surface of the lands involved in this case, in open, notorious, exclusive and continuous possession for as long or longer than ten years prior to June 24, 1944, but no commercial mining or drilling of the coal, oil, gas or other minerals has been done by them."

The exhibits upon which Mountain Mission School bases its claim to the land in controversy show the following:

"To, Alex Beavers, Comm. appointed by the Circuit Court of Buchanan County, to *set* lost & destroyed deeds, wills, *records*, &c.

"The amended Petition of E. Jane Rowe, wife of M. E. Rowe would respectfully represent that she is the owner of two certain tracts or parcels of land, lying and being in Buchanan County Virginia, on Slate Creek and its tributaries, One tract containing 65 acres, and patented in the name of Wm. H. Boothe from the Commonwealth of Virginia, the other *boundry containg* . . . . . acres . . . . . *apart* of which was deeded to said Wm. H. Boothe by Baldwin & Beavers. The said deeds from said Boothe to Mrs. Rowe *was* made, acknowledged and recorded in the year 1881, and was destroyed in the year 1885 by fire. The deed was with covenants of genl. Warranty, for the consideration of love & affection and further that said E. J. Rowe and M. E. Rowe support and maintain said Wm. H. Boothe & Catharine Boothe during their natural lives.

"The deed was also made to said E. J. Rowe, during her life, and was then to go to the heirs of her body at her death. The prayer of Petitioner is that the deed heretofore on record be set up, and again placed on record, &c. No one will be affected by these proceedings, outside of Petitioner.

"Respectfully &c

E. J. Rowe.

by, F. B. Kiser, Atty."

"Jane Rowe, Exparte—Upon Exparte Petition.

"Upon the amended Petition of Jane Rowe filed before me for the purpose of taking proof of the contents of deed from W. H. Boothe & Catharine Booth to Jane Rowe, for two tracts of land—acres of land in Buchanan Co., Va., and which as Petitioner alleges, has been destroyed by fire. Jo Hibbitts a witness of lawful age, after being first duly sworn deposes and says:—

"Please *slate* all you remember in regard to the deed from Wm. H. & Catharine Boothe, who it was made to, and what covenants if any were made in said deed—

"The Deed was made to E. J. Rowe, during her lifetime, then the land to go to the bodily heirs of the said E. J. Rowe.

Jo. Hibbitts.

"Douglas Cook, another witness, after being sworn deposes and says—My understanding was that E. J. Rowes' deed from Wm. H. Booth & Catharine Boothe was bounded as follows—(Then follows an

extensive description by metes, bounds and monuments of a parcel of land.)

Douglas Cook.

"I hereby certify, that the foregoing depositions were duly taken, sworn and subscribed to before me on this 13 day of Sept. 1894.

Alex Beavers Commissioner."

"To the Honorable W. T. Miller, Judge of the Circuit Court of Buchanan County Virginia: The undersigned Alex Beavers, Commissioner appointed by the said Circuit Court of Buchanan County, to take proof of lost and destroyed deeds, wills, records &c., in Buchanan County Virginia: Would respectfully report, that, upon the *amended* Petition of E. J. Rowe filed before me for the purpose of making proof of a deed to two tracts of land, conveyed by deed from Wm. H. Boothe and Catharine Boothe to Petitioner which as said Petitioner alleges was destroyed by fire. Said Commissioner, after giving due notice to all parties appearing to be interested in any way in said lands, proceeded on the . . . . . day of Sept. 1894. to take the proof herewith filed, Said Commissioner would respectfully further report that said E. J. Rowe wife of M. E. Rowe is the owner of two tracts of land in said County containing . . . . . acres more or less, 65 acres of said land was originally granted by the Commonwealth of Va. to Wm. H. Boothe, the *bal* of said boundary was or a portion of same was deeded to said Wm. H. Boothe by Baldwin & Beavers, Said deed from Wm. H. Boothe & Catharine Boothe to said E. J. Rowe, wife of M. E. Rowe was regularly acknowledged and recorded in Buchanan County Court Clerk's Office in the year 1881 and was in the year 1885, destroyed by fire. The description of the land is as follows, to-wit: (Here follows an extensive description by metes, bounds and monuments of the land.)

"The said deed from Wm. *M.* Boothe and Catharine was made to said E. J. Rowe, to be hers during her life, and at her death the said land was to go to the heirs of her body, said E. J. Rowe and M. E. Rowe was to maintain Wm. H. Boothe and Catharine Boothe during their lives.

Respectfully submitted,

Alex Beavers, Commissioner."

Recorded on September 28, 1894 in the Clerk's Office of Buchanan County, Virginia.

"E. J. ROWE—

—Upon Exparte Petition—

"This cause came on to be heard upon the Petition of E. J. Rowe, and the report of Alex Beavers, Commissioner, which report, having been filed more than ten days before the commencement of this *term* and no exceptions having been taken thereto, the same is confirmed. It is therefore adjudged, ordered and decreed, that the report of said Alex Beavers Commr. be recorded by the Clerk of the County Court of this Co. as and for the deed which was destroyed by fire, and that the Petitioner pay all costs of this proceeding and that execution may issue therefor."

This decree upon this *ex parte* petition was entered in the Circuit Court of Buchanan County, Virginia, on the 28th day of September, 1894.

Upon consideration thereof, the chancellor of the trial court held that: (1) the 1894 proceeding of Mrs. Rowe was "void from its inception because no notice had been given to Buchanan and White of said proceeding," and that the devisee of Buchanan and the heirs-at-law of White were not bound thereby; (2) that the report of the commissioner and the decree of the court in that proceeding should be set aside and annulled as clouds on the title of the appellees; (3) that as between the parties to this suit, appellees had title to an undivided one-third interest in the coal and other minerals on the 321.5-acre tract; (4) that Mountain Mission School owned the remaining two-thirds of the tract; (5) that appellees were entitled to receive one-third of all royalties from the coal mined on the entire tract and Mountain Mission School the other two-thirds. The case was continued on the docket, pending this appeal, for the purpose of permitting, upon the conclusion of the cause, a proper distribution of the royalties due and to become due.

The controlling question in this case is whether or not the "set up proceeding" instituted by Mrs. Rowe, and concluded by the court order of September 28, 1894 was valid so as to affect the title of Buchanan and White and their successors in title to the one-third interest conveyed to them by William H. Boothe and E. J. Rowe.

The proceeding of 1894, commonly known and referred to as a "set up proceeding," was attempted to be taken under the provisions

of §§ 3339[1] and 3340 of the Code of Virginia, 1887[2], then in effect.

Section 3340 provided how the contents of a lost or illegible record or paper might be proved before a commissioner, and so far as pertinent, reads as follows:

"Any person desirous of proving the contents of any paper so filed, or anything which was of record in any such book, may file with a commissioner, to be appointed for this special purpose for each county and corporation by the circuit court of the county, or the circuit or corporation court of the corporation, or the judge thereof in vacation, a petition in writing, stating the nature of the paper or record, the contents of which he desires to prove, and what persons may be affected by such proof. Whereupon the commissioner shall appoint a time and place for proceeding on the said petition, whereof reasonable notice shall be given to all parties named in said petition, or interested in the proceeding, and to any others, who shall be known to the commissioner, or who shall claim, to be so interested. * * *"

Section 3340, Code of 1887, provided only a cumulative remedy and did not deprive a party of his common law remedy. *Smith* v. *Carter,* 3 Rand. (24 Va.) 167; *Newcomb* v. *Drummond,* 4 Leigh (31 Va.) 57; *Corbett* v. *Nutt,* 18 Gratt. (59 Va.) 624. E. J. Rowe chose to proceed under the statute; and, therefore, the jurisdiction of the court was dependent upon a substantial compliance with its provisions. The procedure was under a new jurisdiction created by statute and substantial compliance therewith was essential, otherwise the proceeding was a nullity. Cf. *Coleman* v. *Virginia Stave Company,* 112 Va. 61, 75, 70 S. E. 545.

The statute required that the petition thereunder state "what persons may be affected by such proof," that is, to name such persons. Not only was there no statement of the names of the persons who might be affected by the proceeding; but it expressly appears that the proceeding was "*ex parte*", and the petition contained the affirmative statement that: "No one will be affected by these proceedings, outside of Petitioner." If, as the petition stated, the alleged destroyed deed conveyed to Mrs. Rowe the property for her life only, with remainder to "the heirs of her body at her death," her heirs-at-law were necessarily interested parties. Moreover, prior to 1894, Mrs. Rowe had joined with her father in the May 22, 1889

---

[1] Section 3339 authorized the recording of lost or illegible wills, deeds or other papers by a clerk of court upon the production to him of any such original paper previously recorded, or an attested copy thereof.

[2] These sections are now §§ 8-282 and 8-283, as amended, Code of Virginia, 1950.

deed conveying the undivided one-third interest in question to Buchanan and White. Thus, even though she had an interest in the 321.5 tract by virtue of the alleged deed to her in 1881 from her father, she effectively conveyed whatever interest she had in the one-third undivided interest in the coal and minerals to Buchanan and White five years before her 1894 proceeding. She is chargeable with notice of her 1889 conveyance, and yet she failed to state in her petition the names of Buchanan and White, her grantees, who were then living.

Buchanan and White were never made parties to the proceeding, never given any notice thereof, nor afforded an opportunity to be heard. The recital in the commissioner's report that he proceeded after giving notice to all parties "appearing to be interested," certainly cannot be taken to mean that he gave notice to persons whose names do not appear in the proceeding. He was expressly told that there were no such other persons.

It is significant, we think, that Bishop, the successor in title to all of the rights, title and interest of the heirs-at-law of Mrs. Rowe, in his deed of April 7, 1915 to Stinson expressly excepted from the conveyance, "1/3 of the coal which had been conveyed to John A. Buchanan and James L. White by deed of record."

It is apparent upon the face of the record that petitioner did not comply with the requirements of § 3340, Code 1887. Compliance with respect to naming the persons and describing the property which might be affected was necessary to give the court jurisdiction with regard to the subject matter, and the parties affected thereby. It may be assumed that both Commissioner Beavers and the court acted upon the statement in the petition that, "No one will be affected by these proceedings, outside of Petitioner." This is emphasized by the fact that the commissioner and the court throughout designated the proceeding as "*ex parte.*"

The statute, in order to be valid, as the learned trial judge said in his written opinion filed with the record, must be construed as being intended to meet the requirements for due process of law under the Constitutions of the Commonwealth of Virginia and the United States. It is elementary that every man is entitled to a day in court to defend his rights, and that a decree rendered against him when he has had no opportunity for defense, is a nullity and may be so pronounced by any court wherein it may be drawn into controversy. *Cronise* v. *Carper, et als.,* 80 Va. 678; *Ogden* v. *Davidson,* 81 Va. 757; *Lowry* v. *Noell,*

177 Va. 238, 13 S. E. 2d 312; *Harris* v. *Deal,* 189 Va. 675, 54 S. E. 2d 161; *Pennoyer* v. *Neff,* 95 U.S. 714, 24 L. ed. 565; 12 Am. Jur., Constitutional Law, § 569, page 262 and § 573, pages 267 *et seq.*

"Persons entitled to be made parties, but who are not joined in such a proceeding, are not concluded by the determination therein in favor of the petitioner." 34 Am. Jur., Lost Papers and Records, § 29, page 604.

"Persons owning or claiming any estate in fee in the property, or who are in possession of it, or of any part therof, should be made defendants, as should all those to whom any part of the lands has been conveyed, the instruments of such conveyance having been recorded after the time of the destruction of the records and prior to the filing of the suit." 34 Am. Jur., Lost Papers and Records, § 30, page 605.

The description of the land in the 1894 petition is meager, vague and indefinite. It is uncertain as to the number of acres involved. It refers to two parcels of land but only one is actually described, and that as "containing 65 acres, and patented in the name of Wm. H. Boothe from the Commonwealth of Virginia, the other *boundry containg* . . . . . acres . . . . . *apart* of which was deeded to said Wm. H. Boothe by Baldwin & Beavers." The witness Jo Hibbitts was testifying from memory thirteen years after the alleged deed was claimed to have been made. Douglas Cook, the other witness, gave an extended and remarkable description of the land from his "understanding," after a lapse of thirteen years. He quoted precise descriptions, measurements and boundaries, which if printed on a page of this size, type and spacing, would occupy the full page.

■ There is no merit in the contention of Mountain Mission School that it had become entitled to the land involved by reason of adverse possession. There was a severance of the title to the coal by the deed from William H. Boothe and E. J. Rowe to Buchanan and White in 1889, five years prior to the set up proceeding instituted by Mrs. Rowe. The ownership of the surface of the land by Mountain Mission School, while undisputed, was the mere silent possession of the surface only. It did not constitute possession of the mineral estate, which had been sold and severed from the surface. Any possession of the surface after the sale of the coal and minerals inured to the benefit of the owner of the coal and minerals. *Clevinger* v. *Coal Company,* 199 Va. 216, 98 S. E. 2d 670. There is no contention that Mountain Mission School acquired actual possession of any part of the coal by commercial mining thereof. Moreover, the School, as

a cotenant, did not hold adversely to the appellees. 1 Mich. Jur., Adverse Possession, § 47, page 255; 5 Mich. Jur., Cotenancy, § 34, page 65; 13 Mich. Jur., Mines and Minerals, § 72, pages 88, 89, 90; 58 C. J. S., Mines and Minerals, § 157, pages 329 *et seq.*

█ Finally, Mountain Mission School argues that it is entitled to the land in controversy by virtue of the provisions of § 8-284, Code of 1950, enacted in 1944, Acts of Assembly 1944, page 178.

Section 8-284 is a curative statute only, created to provide a remedy in addition to that afforded by the common law. It applies where there have been irregularities in the set up proceeding, but not to a null and void proceeding. It was not intended to breathe life into a proceeding which never had any validity. There was no mere irregularity in the 1894 proceeding by Mrs. Rowe. There was lack of due process, because no jurisdiction was acquired over the necessary parties, nor over the subject matter, since the petition utterly failed to adequately describe the land claimed by Mrs. Rowe. Not even the legislature may take the property of a person without due process of law.

In consideration of all of which, we hold there was no error in the decree of the trial court in this case. That decree is affirmed and the cause remanded to the lower court in order that it may direct a proper distribution of the royalty funds involved in this proceeding, and enter such further order as may be necessary and appropriate.

*Affirmed and remanded.*