# Richmond

MOUNTAIN MISSION SCHOOL, INCORPORATED V. BUCHANAN REALTY CORPORATION, ET AL.

November 28, 1966.

Record No. 6305.

Present, All the Justices.

*Carl C. Gillespie* and *George C. Sutherland* (*S. H. Sutherland*, on brief), for the appellant.

*Marjorie Coleman* (*Pobst & Coleman*, on brief), for the Buchanan Realty Corporation.

SPRATLEY, J., delivered the opinion of the court.

Lester Coal Company, Incorporated, instituted this proceeding by filing a petition against Mountain Mission School, Incorporated, and

Buchanan Realty Corporation, praying for a declaratory judgment as to which of the two defendants was the rightful owner of the coal and minerals underlying 115.63 acres of land located on Knox Creek, in Buchanan County, Virginia. The petitioner alleged that it had leased the coal and minerals from each of the defendants, and that each claimed ownership and the profits therefrom.

Mountain Mission School demurred to the petition on the ground that it was an interpleader concerning title to real estate, and as such was not authorized by law. Its demurrer was overruled, and it then filed its answer claiming ownership of the coal, and prayed that its answer be treated as a cross-bill against Buchanan Realty. Buchanan Realty likewise answered the petition, claimed title to the coal and minerals, and also asked that its answer be treated as a cross-bill against Mountain Mission School.

The cause came on to be heard upon stipulations of the parties, deeds and court records, evidence taken by depositions, and testimony heard *ore tenus*. The trial court, on May 26, 1964, entered a decree adjudicating that Buchanan Realty Corporation was the owner of the coal in controversy; and that "the deeds in the chain of title from Shadrick Dotson down to and including the deed to Mountain Mission School, Incorporated, as shown in the record," and the lease from Mountain Mission School, Incorporated, "are clouds on the title of Buchanan Realty Corporation to said 115.63 acres of coal, oil, gas and other minerals, and the same are hereby set aside, vacated and held for naught insofar as same cover and include the coal, oil, gas and other minerals in, on, and under said 115.63 acres;" and that all royalties for the coal be paid to Buchanan Realty Corporation. We granted this appeal to consider the contention of Mountain Mission that the court erred in the above determination.

The parties, by stipulations, described the land in controversy by metes and bounds, and as containing 115.63 acres; agreed that the land is covered in a 2,500-acre grant from the Commonwealth of Virginia to Charles A. Lohnert, A. J. May and Charles T. Painter, dated August 5, 1876, and duly recorded in the Clerk's Office of Buchanan County, Virginia; that by sundry mesne conveyances, the title of the grantees of the 2,500-acre tract passed to Buchanan Realty Corporation; that the land involved is also included in a 2,000-acre survey to Jonathan Hurley, the greater part of which lies within the 2,500-acre grant from the Commonwealth above mentioned; that the survey was recorded December 28, 1886, in the above clerk's office, but no grant

or court right ever issued thereon; that the land in controversy is a part of 750 acres described in a deed dated July 6, 1889, from Shadrick Dotson and wife to H. G. Charles; that the 750 acres are a part of the real estate covered by a deed of special warranty from R. E. Williams, special commissioner of the Circuit Court of Buchanan County, Virginia, in the chancery cause of *E. E. Smith, Treasurer, etc. v. A. C. Stacy, H. G. Charles, et als.*, to W. F. Genheimer, dated July 14, 1938; that Genheimer conveyed the 750 acres to the First National Bank of Williamson, Williamson, West Virginia, by deed dated June 3, 1940; and that the said Bank conveyed the same land to Mountain Mission School, Incorporated, by deed dated February 19, 1943. All deeds were duly recorded.

The evidence shows that title to the 2,500-acre grant from the Commonwealth was acquired by Richard L. Brown, Jr., by deed from H. A. McCurdy, dated July 9, 1890, all mesne conveyances prior thereto being regular in form and substance.

In 1899, there developed a controversy between Brown, a nonresident of Virginia, and H. G. Charles and a number of other claimants, as to the ownership of the land in the interlocking 2,000-acre survey. Brown first instituted an action of ejectment against Charles and those claimants, and later brought a chancery suit in the Circuit Court of the United States for the Western District of Virginia, against the same claimants, seeking to enjoin them from trespassing on the 2,000 acres. A compromise was effected by the parties.

The Federal Court, by decree dated October 18, 1899, confirmed the settlement, approved a deed between the parties, dated March 14, 1899, carrying into effect the settlement, and dismissed the legal proceedings. By the above deed, Brown conveyed to the several defendants in the ejectment action and the chancery suit, except Eli Cook, the surface of "the parts and parcels of said tract of 2,000 acres claimed by them respectively as shown by the report of survey", made under order of the U. S. Court, mentioning especially 120 acres (containing the 115.63 acres in controversy here) claimed only by H. G. Charles. H. G. Charles and his codefendants in the legal proceedings, except Eli Cook, on the other hand, conveyed the coal and minerals under both the lands in the 2,500-acre grant and the 2,000-acre survey to Brown. Cook, named as a party to the deed, did not sign the instrument, and there is no evidence that he owned any part of either of the tracts of land involved.

On April 25, 1909, Brown conveyed to A. C. Flood the land in the 2,500-acre grant, excepting the surface of 2,000 acres, which he had theretofore conveyed to others. Flood conveyed the land acquired from Brown to H. A. McCurdy and wife on July 29, 1900, and McCurdy and wife conveyed the same land to John W. Flannagan, Jr., March 17, 1917.

H. G. Charles and wife by deed dated May 1, 1920, conveyed to John W. Flannagan, Jr., "all their right, title and interest, whether at law or in equity in and to all the coal, oil, gas and other minerals, on and under" the 2,500-acre grant and the 2,000-acre Hurley survey. Flannagan and wife conveyed the same property to F. H. Combs, receiver of the Bank of Grundy, and the Bank of Grundy, under an order of the Circuit Court of Buchanan County, conveyed all the lands acquired from Flannagan to Buchanan Realty Corporation by deed dated December 28, 1944.

Thus it is clear from the stipulated facts and the title papers of record that there was a severance of the title to the surface of the land involved from the title to the coal underlying that land, by the 1899 deed in which Richard L. Brown, Jr. conveyed the surface to H. G. Charles and others, and H. G. Charles and others conveyed the coal and minerals to Brown, and by the subsequent conveyance of the coal and minerals in 1909 of Brown to A. C. Flood. Not only did H. G. Charles join in the conveyance of the coal in the compromise deed of March 14, 1899; but he also executed the deed of May 1, 1920, conveying all of his right and title to the coal to John W. Flannagan, Jr. Each of the above deeds was executed and recorded many years prior to the 1938 suit of *E. E. Smith, Treasurer, etc.* v. *A. C. Stacy, H. G. Charles and others*, hereinafter referred to.

We now turn our attention to the title of Mountain Mission School. We first observe that it was not shown how Shadrick Dotson acquired title to the land conveyed by him on July 6, 1889, to H. G. Charles. It is suggested that Dotson acquired the land by inheritance from Jonathan Hurley, or by grant from Hurley's heirs, or by adverse possession. It is clear, however, that the deed of Dotson was executed more than 12 years after the Commonwealth had issued a grant for the land to Lohnert, May and Painter.

Mountain Mission School contends that even though good title was not acquired by Charles in the deed from Shadrick Dotson, the deed from R. E. Williams, special commissioner, to W. F. Genheimer, a predecessor in its chain of title, was sufficient to give color of title to

all the land it purported to convey, including the coal and minerals thereunder, and that under such color of title, it had acquired ownership of the 750 acres by adverse possession. We find no merit in either contention.

The above proceeding was a general creditors' suit. It was referred by the court to a commissioner in chancery for a report of the lands owned by H. G. Charles and his co-defendants, and the liens, if any, against the same. The commissioner reported that H. G. Charles owned the 750 acres, which had been conveyed to him by Dotson in 1889, in spite of the fact that Charles had, many years prior thereto, conveyed all of the coal and mineral rights under said land to Richard L. Brown, Jr., a predecessor in title of Buchanan Realty Corporation, and had also by his deed of May 1, 1920, conveyed the same rights to John W. Flannagan, Jr., likewise a predecessor in title of Buchanan Realty Corporation.

The commissioner further reported a deed of trust from H. G. Charles and wife to R. E. Williams, trustee, dated November 18, 1931, which deed recited that the conveyance was to secure the payment of three notes executed by H. G. Charles, payable to E. R. Boyd, John W. Flannagan, Jr. and H. Claude Pobst, and endorsed by the said payees, which "were discounted at the Bank of Grundy, Inc., Grundy, Virginia, and by the said bank transferred and assigned as collateral security to Fifty-Third Union Trust Company of Cincinnati, Ohio, and are now held by said Fifty-Third Union Trust Company." The deed of trust covered two tracts of land, one in Pike County, Kentucky, and the other 2,200 acres in Virginia under a description which does not identify it as any part of the land in controversy here.

At the time the chancery suit was instituted, and when the deed of R. E. Williams, special commissioner, was executed, Flannagan held title to the coal and minerals under the land in controversy. He was not a party to the suit, and had no notice or summons to appear therein. There was no judgment lien in favor of Flannagan reported. The purpose of the suit was to subject the property of the defendants only to the payment of their debts. Flannagan did not hold or own the notes secured by the deed of trust of November 18, 1931, at the time of its execution, and there is no evidence that he ever owned them thereafter.

In the recent case of *Mission School* v. *White*, 204 Va. 256, 263, 130 S. E. 2d 452, citing numerous cases, we said that:

"It is elementary that every man is entitled to a day in court to defend his rights, and that a decree rendered against him when he has had no opportunity for defense, is a nullity and may be so pronounced by any court wherein it may be drawn into controversy."

To the same effect, see *Harris* v. *Deal*, 189 Va. 675, 686, 687, 54 S. E. 2d 161; 16 Am. Jur., 2d, Constitutional Law, § 544, pages 933 *et seq.* and § 548, pages 941 *et seq.*

There is no merit in the contention that Virginia Code, 1950, § 8-673, which provides, "When title of purchaser at judicial sale not to be affected," is applicable here. It was clearly not the purpose of the legislature by the enactment of that section to authorize a court by judicial sale to divest one of his ownership of property, who is not a party to the suit. Such a procedure would be without due process of law. In the chancery cause, the special commissioner could convey no better title to the coal, oil, gas and other minerals under the land than H. G. Charles had, and Charles, at that time, had none. *Finkel Products* v. *Bell*, 205 Va. 927, 932, 933, 140 S. E. 2d 695.

The ownership of the surface of the land by Mountain Mission, while undisputed, was a mere possession of the surface only. It did not constitute possession of the mineral estate which had been severed from the surface. In order for the possession to be considered adverse, there must have been actual commercial mining of the coal, and there is no evidence that there ever had been such mining in connection with the land involved. *Clevinger* v. *Coal Company*, 199 Va. 216, 98 S. E. 2d 670; *Mission School* v. *White, supra; Smith* v. *Pittston Company*, 203 Va. 408, 124 S. E. 2d 1.

We find no evidence to support the contention that Flannagan and the Bank of Grundy were either, as a matter of fact or of law, guilty of laches, or estopped to deny the claim of title by Mountain Mission School.

There is no merit in the contention that the compromise deed between Brown of one part and Charles and others of the second part, was invalid because it was not signed by one named as a party in the deed. It is not shown that the non-signer owned any interest in the land, or claims any interest therein. The deed was sufficient to convey the interest of the several parties who signed the deed.

In consideration of all of which, we hold that no error has been shown in the decree of the trial court, and it is affirmed.

*Affirmed.*