## Richmond

DOUGLAS B. FUGATE, COMMISSIONER OF THE DEPARTMENT
OF HIGHWAYS AND TRANSPORTATION V.
W. TARRANT FOX.

November 24, 1976.

Record No. 751016.

Present, All the Justices.

*John J. Beall, Jr., Assistant Attorney General (Andrew P.
Miller, Attorney General; Walter A. McFarlane, Deputy
Attorney General; J. Westwood Smithers, Jr., Assistant
Attorney General,* on brief), for appellant.

*Russell Nash Brahm, III (Hundley, Taylor & Glass,* on brief),
for appellee.

CARRICO, J., delivered the opinion of the court.

In a motion for declaratory judgment filed pursuant to Code
§ 8-581.1, the plaintiff, W. Tarrant Fox, alleged that he was the
owner of 0.24 acre of land bordering the Mattaponi River in King
William County. He further alleged that the defendant, Douglas
B. Fugate, Commissioner of the Department of Highways and
Transportation, had taken the land for highway purposes
without paying the plaintiff compensation. The plaintiff prayed
that he be declared the fee simple owner of the land and that
commissioners be appointed to determine the amount of
compensation to which he was entitled.

In his answer, the defendant alleged that the 0.24-acre parcel long had been included within the boundaries of a public landing. Alternatively, he alleged that a tax deed, through which the plaintiff claimed title, was null and void.

The matter was submitted to a jury, which found in favor of the plaintiff and reported that he was "the owner of the 0.24 acre of land." In a decree confirming the verdict, the trial court ruled that the land had been taken from the plaintiff for public use without just compensation within the meaning of Article I, Section 11 of the Virginia Constitution. From this decree, we granted the defendant an appeal.

The 0.24-acre parcel in dispute is located on the King William County shore of the Mattaponi River at Aylett. In 1967, the Highway Department constructed a bridge across the river to carry the eastbound lanes of Route 360, utilizing in the project the property in question. Although the plaintiff was compensated by the Highway Department for other land taken from him for the project, he was not paid for the 0.24-acre tract.

The plaintiff claims title to the 0.24-acre parcel through a 1931 tax deed to his father, J. C. Fox. The evidence with respect to the tax title shows that on March 25, 1902, certain lots at Aylett standing in the name of Samuel McDonald were offered for sale at public auction for nonpayment of taxes for the year 1900. No person having bid the amount chargeable for the delinquent taxes, the lots were purchased by the county treasurer in the name of the Auditor of Public Accounts for the benefit of the Commonwealth.

On February 11, 1922, J. C. Fox filed an application with the clerk of the circuit court to purchase "five (5) Lots in Aylett . . . standing in the name of Samuel McDonald." On April 7, 1928, the circuit court entered an order directing the recording of a 1925 "survey with plat" of the McDonald lots. The court also ordered execution by the clerk of a deed to J. C. Fox conveying the property.[1] Then, on April 15, 1931, a deed conveying to Fox the land shown on the plat was executed by the clerk, and on April 23, 1931, the deed was admitted to record.

[1] In 1928, a court order was required either dispensing with or directing the recording of a survey report showing the property sought to be purchased for nonpayment of taxes (§ 2495(6) of the Code of 1919). The circuit court could compel execution of a tax deed only if the clerk refused to execute the deed (§ 2495(7)); in absence of a refusal, it was not the province of the court to inquire into the regularity or sufficiency of the proceedings

The 0.24-acre now in controversy is part of one of the lots shown on the plat ordered to be recorded in the tax deed proceeding. The plaintiff acquired his interest in the land in dispute through the will of his father and a subsequent deed of partition among the father's heirs.

In his evidence, the defendant claimed that the 0.24-acre tract was not part of the property which was owned by Samuel McDonald in 1900 and sold for delinquency in payment of taxes. The defendant claimed, instead, that the disputed tract had been part of the public landing at Aylett since the year 1836 or before.

On appeal, the plaintiff makes light of the defendant's claims. The plaintiff concedes, however, that, to sustain his right of ownership, he must rely upon the strength of his own title and not upon the weakness of the claims of his opponent. The determinative question, therefore, is whether the 1931 tax deed to the plaintiff's predecessor passed valid title to the tract in dispute. In resolving this question, we will assume that the tract was not part of the public landing but was a portion of the McDonald lots sold for delinquent taxes. Nevertheless, the plaintiff still cannot prevail if, as the defendant contends, the 1931 tax deed was null and void on jurisdictional grounds. If jurisdictionally void, the 1931 deed would have passed no title, and the Commonwealth, as beneficial purchaser at the 1902 tax sale, would have superior right to the land as against the plaintiff. *See Dennis* v. *Robertson,* 123 Va. 456, 479, 96 S.E. 802, 809 (1918).

In 1922, when the plaintiff's predecessor, J. C. Fox, made his application to purchase the McDonald lots, and in 1931, when he received and recorded his tax deed, § 2495 of the Code of 1919 governed the manner in which "lands purchased in the name of the Auditor [of Public Accounts] and unredeemed" were "to be sold." [2] Precisely delineated were the method and time of

---

beyond considering the survey requirement. *Bradley* v. *Patterson,* 112 Va. 33, 36, 70 S.E. 540, 541-42 (1911). Another Code section, 2496, empowered the court to "try all questions arising upon any notice or motion" under § 2495. Neither a refusal by the clerk to execute a deed nor any question arising upon a notice or motion appears in the record of the present case. Therefore, we give the 1928 order only the effect of showing compliance with the survey requirement of § 2495(6).

[2] In 1973, substantial changes were made in the statutory provisions relating to the sale of land for delinquent taxes. The former provisions contained in Articles 2 through 7 of Chapter 21 of Title 58 (Code §§ 58-1029 to -1117) were repealed and the provisions of Article 8 (Code §§ 58-1117.1 to -1117.11) were added. Now, sale of land for delinquent taxes "shall be by bill in equity" (Code § 58-1117.3).

handling applications and deeds for the purchase of such lands. Subsection 8 of § 2495 is particularly relevant here. In pertinent part, the subsection provided as follows:

"In all cases where applications are pending, or may hereafter be filed . . . unless hindered by judicial proceedings, if no such deed be made under this section, within two years after the date of the said application to the party entitled to the deed, his or their heirs or assigns, and if the said real estate be not redeemed as herein provided, then the said application shall be null and void, and all amounts paid by such applicant as provided in this section shall be forfeited to the Commonwealth and the rights of such applicant to such land shall cease, and the land shall be open to a new application as if none had been made."

The defendant contends that this statutory language rendered invalid the tax title upon which the plaintiff relies. The defendant argues that because J. C. Fox's application to purchase was made in 1922 and the tax deed was not executed until 1931, the application was null and void and hence the deed was invalid.

On the other hand, the plaintiff contends that any defects or irregularities in the proceeding by which his father acquired the tax deed were cured by another statute, § 2503(b) of the Code of 1936, adopted in 1928, before the deed was executed. In pertinent part, § 2503(b) was worded as follows: [3]

"All deeds heretofore or hereafter made by a clerk of court to a purchaser, under the provisions of . . . chapter ninety-nine of the Code of nineteen hundred and nineteen [including § 2495 of the Code of 1919] which deeds have been duly admitted to record in the clerk's office of the county . . . wherein the land conveyed thereby is located for fifteen years shall be held, and the same are hereby declared valid in all respects and for all purposes . . . ."

The plaintiff argues that the delay in execution of his predecessor's tax deed beyond the two-year period prescribed by

---

[3] Section 58-1066 of the Code of 1950, the successor to § 2503(b) of the Code of 1936, was repealed in 1973, when the General Assembly revised the statutes relating to sale of land for delinquent taxes. In 1974, however, a similar curative statute was enacted, and the new version appears as Code § 58-1026.1.

§ 2495(8) was a mere procedural defect and "exactly what § 2503(b) was enacted to cure." And, because the defect was procedural rather than jurisdictional and a period of 15 years has elapsed since the tax deed was recorded, the plaintiff asserts that, by the terms of § 2503(b), his tax title is insulated from collateral attack by the defendant.

While we have not construed § 2503(b) or its successors, we have interpreted a similar curative statute, Code § 8-284. This latter statute relates to "set up" proceedings to establish the contents of any lost, destroyed, or illegible book, record, or paper. The Code section provides that all such proceedings wherein, under certain circumstances, a final judgment or decree has stood unimpeached for more than 20 years shall be "valid and binding in all respects, notwithstanding any irregularities in the proceedings."

In *Mountain Mission School* v. *White*, 204 Va. 256, 265, 130 S.E.2d 452, 459 (1963), we said of § 8-284: "It applies where there have been irregularities in the set up proceeding, but not to a null and void proceeding. It was not intended to breathe life into a proceeding which never had any validity."

What was said in *Mission School* of § 8-284 applies with equal force to § 2503(b) in the present case. We believe and, indeed, the plaintiff concedes that § 2503(b) was intended to cure only procedural defects or irregularities in tax title proceedings. We do not believe, however, that a failure to comply with the two-year requirement of § 2495(8) of the Code of 1919 was a mere procedural defect or irregularity. *See Bowe* v. *City of Richmond*, 109 Va. 254, 259-60, 64 S.E. 51, 53-54 (1909).

By the language of § 2495(8), the application for purchase of delinquent lands was made the substantive predicate of the clerk's authority to execute a tax deed, and the two-year requirement was imposed as a jurisdictional limitation upon exercise of that authority. To demonstrate the jurisdictional nature of the application and of the two-year requirement, the General Assembly employed clear and unambiguous language. If a deed was not made within the two-year period, the application was rendered null and void; the applicant forfeited all amounts he had paid in connection with his attempt to purchase; and his rights to the land ceased upon expiration of the period. Only the hindrance of judicial proceedings was sufficient to intervene against imposition of the two-year

jurisdictional limitation. No such hindrance appears from the record of the present case.

Accordingly, we hold that because the tax deed in this case was not executed until 1931, some nine years after the date of the application in 1922 and well beyond the jurisdictional time limit prescribed by § 2495(8) of the Code of 1919, the application was null and void and, therefore, the deed was invalid. This results in reversal of the decree appealed from and entry of final judgment in favor of the defendant.

*Reversed and final judgment.*